BARRETT S. LITT, SBN 45527
Email: blitt@kmbllaw.com
RONALD O. KAYE, SBN 145051
Email: rok@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

SALOMON ZAVALA, SBN 243424
Email: szavala@zavalalawgroup.com
ZAVALA LAW GROUP, P.C.
1930 Wilshire Blvd., Suite 817
Los Angeles, California 90057
Tel: (213) 413-0144
Fax: (323) 210-7385

DO KIM, SBN 231038
Email: dkim@dokimlaw.com
LAW OFFICE OF DO KIM APLC
3435 Wilshire Blvd., Suite 2700
Los Angeles, California 90010
Tel: (213) 251-5440
Fax: (213) 232-4919

Attorneys for Plaintiff
VICENTE BENAVIDES FIGUEROA

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICENTE BENAVIDES FIGUEROA, <br><br> Plaintiff, <br><br> vs. <br><br> KERN COUNTY; et al, <br><br> Defendants. | **CASE NO. 1:19-cv-00558-DAD-JLT** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF KERN, ROBERT CARBONE, GREGG BRESSON, AND RAY LOPEZ'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Date: November 5, 2019** <br> **Time: 9:30 a.m.** <br> **Courtroom: 5** |

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................i

I.    INTRODUCTION.......................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................1

III.  MOTION TO DISMISS STANDARD .................................................3

IV.   PROSECUTORIAL IMMUNITY DOES NOT BAR THE SECTION 1983 CLAIMS AGAINST DEFENDANT CARBONE.......................4

V.    CALIFORNIA STATUTORY IMMUNITY DOES NOT BAR THE SECTION 1983 CLAIMS ......................................................................9

VI.   THE SAC ADEQUATELY ALLEGES CONSPIRACY UNDER FEDERAL LAW ....................................................................10

VII.  THE SAC ADEQUATELY ALLEGES A RECKLESS INVESTIGATION ....................................................................12

VIII. THE SAC ADEQUATELY ALLEGES A NEGLIGENT HIRING/SUPERVISION CLAIM...........................................16

      A.    Plaintiff need not establish a special relationship in a negligent hiring/supervision/training claim where the negligence is that of the entity's employee in the course and scope of employment. ........................................................................16

      B.    Govt. Code Sections 820.6 and 820.8 do not provide immunity for supervisors................................................................19

      C.    Section 821.6 immunity does not apply to false imprisonment resulting from denial of a fair trial, and alternatively is limited to malicious prosecution. ........................................................20

IX.   THE SAC ADEQUATELY ALLEGES A GROSS NEGLIGENCE CLAIM ...........................................................21

X.    THE SAC ADEQUATELY ALLEGES A BANE ACT CLAIM ......21

      A.    No Retroactivity Question Exists .............................................22

      B.    The SAC Adequately Alleges Specific Intent ..........................23

      C.    Statutory Immunity Does Not Bar The Claim..........................24

XI.   CONCLUSION ..........................................................................25

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acevedo v. City of Farmersville*,
2019 WL 3003996 (E.D. Cal. July 10, 2019) .......................................................25

*Akins v. Epperly*,
588 F.3d 1178 (8th Cir. 2009)...............................................................................14

*Amrine v. Brooks*,
522 F.3d 823 (8th Cir. 2008)...........................................................................12, 13

*Amylou R. v. Cty. of Riverside*,
28 Cal. App. 4th 1205, 34 Cal. Rptr. 2d 319 (1994).......................................19, 20

*Avalos v. Baca*,
517 F. Supp. 2d 1156 (C.D. Cal. 2007) ...............................................................11

*Botello v. Gammick*,
413 F.3d 971 (9th Cir. 2005).................................................................................5

*Buckhalter v. Torres*,
2019 WL 3714576 (E.D. Cal. Aug. 7, 2019) .......................................................24

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993)...................................................................................5, 8, 9

*Burns v. Reed*,
500 U.S. 478 (1991) ........................................................................................5, 8

*C.A. v. William S. Hart Union High School Dist.*,
(2012) 53 Cal.4th 861 .............................................................................16, 17, 21

*Caldwell v. Montoya*,
10 Cal.4th 972 (1995) ..........................................................................................24

*Castro v. County of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016)..........................................................................13, 14

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ............................................................................................13

*Craan v. U.S. Army Corps of Engineers*,
2008 WL 62200 (E.D. Cal. Jan. 4, 2008)...............................................................3

*de Villers v. City of San Diego*,
156 Cal. App. 4th 238 (2007)...............................................................................16

*Devereaux v. Abbey,*
263 F.3d 1070 (9th Cir.2001)...............................................................................15

*Doe v. Regents of Univ. of Cal.*, No. CIV. S-06-1043 LKK/DAD,
2006 WL 2506670 (E.D. Cal. Aug. 29, 2006).....................................................20

ii

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

*Emp'rs Ins. Of Wausau v. Granite State Ins. Co.*,
    330 F.3d 1214 (9th Cir. 2003)..................................................................................20
*Estate of Pimentel v. City of Ceres*,
    2019 WL 2598697 (E.D. Cal. June 25, 2019)........................................................22
*Evan F. v. Hughson United Methodist Church*,
    8 Cal. App. 4th 828 (1992).....................................................................................17
*Fields v. Wharrie*,
    740 F.3d 1107 (7th Cir. 2014)..................................................................................9
*Garcia ex rel. Marin v. Clovis Unified Sch. Dist*,
    627 F. Supp. 2d 1187 (E.D. Cal. 2009)...........................................................17, 18
*Garmon v. Cty. of Los Angeles*,
    828 F.3d 837 (9th Cir. 2016)..................................................................................21
*Genzler v. Longanbach*,
    410 F.3d 630 (9th Cir. 2005)...........................................................................4, 5, 6
*Giraldo v. Department of Corrections & Rehabilitation*,
    168 Cal.App.4th 231 (2008)...................................................................................18
*Gogue v. City of Los Angeles*,
    2010 WL 11549706 (C.D. Cal. June 15, 2016) .....................................................24
*Gordon v. Cty. of Orange*,
    888 F.3d 1118 (9th Cir. 2018)................................................................................14
*Hous. Rights Ctr., Inc. v. Moskowitz*,
    2004 WL 3738293 (C.D. Cal. Sept. 20, 2004) ......................................................22
*In re Figueroa*,
    4 Cal. 5th 576, 412 P.3d 356 (2018) .......................................................................2
*Johnson v. Baca*,
    No. CV 13-4496 MMM (AJWx), 2014 WL 12588641
    (C.D. Cal. Mar. 3, 2014) ..................................................................................19, 20
*Jones v. Kmart Corp.*,
    (1998) 17 Cal.4th 329 .............................................................................................22
*Kalina v. Fletcher,*
    522 U.S. 118 (1997) ..................................................................................................5
*Kingsley v. Hendrickson*,
    —— U.S. ——, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015)..............................13, 14
*Koistra v. County of San Diego*,
    310 F.Supp.3d 1066 (S.D. Cal. 2018)....................................................................24
*Lisker v. City of Los Angeles*,
    780 F.3d 1237 (9th Cir. 2015).................................................................................15
*Lopez v. Southern Cal. Rapid Transit Dist.*,
    40 Cal.3d 780 (1985)...............................................................................................16

iii

*Lugar v. Edmondson Oil Co., Inc.*,
 457 U.S. 922 (1982) ..................................................................................10
*Lum v. County of San Joaquin*,
 756 F.Supp.2d 1243 (E.D. Cal. 2010)...................................................18
*Martinez v. California*,
 444 U.S. 277 (1980) ....................................................................................9
*McClung v. Employment Development Dept.*,
 34 Cal.4th 467 (2004) ..............................................................................23
*McGhee v. Pottawattamie County*,
 547 F.3d 922 (8th Cir.2008)......................................................................9
*Michaels v. McGrath,*
 531 U.S. 1118, 121 S. Ct. 873....................................................................9
*Milstein v. Cooley*,
 257 F.3d 1004 (9th Cir. 2001)................................................................5, 6
*MK Ballistics Systems v. Simpson*,
 2007 WL 2022025 (N.D. Cal. July 9, 2007).............................................9
*Moore v. Valder,*
 65 F.3d 189 (D.C.Cir.1995) .....................................................................6, 9
*Morley v. Walker*,
 175 F.3d 756 (9th Cir. 1999)......................................................................4
*Olvera v. County of Sacramento*,
 932 F.Supp.2d 1123 (E.D. Cal. 2013)....................................................21
*Patterson v. Van Arsdel*,
 883 F.3d 826 (9th Cir. 2018)......................................................................4
*Phillips v. Cty. of Fresno*,
 No. 1:13-cv-538 AWI BAM, 2013 WL 6243278 (E.D. Cal. Dec. 3, 2013)........20
*Price v. Hawaii*,
 939 F.2d 702 (9th Cir.1991)......................................................................10
*Reese v. County of Sacramento*,
 888 F.3d 1030 (9th Cir. 2018)...............................................................22, 23
*Ricciuti v. New York City*,
 124 F.3d 123 (2d Cir. 1997).......................................................................15
*Riese v. County of Del Norte*,
 2014 WL 4089195 (N.D. Cal. Aug. 19, 2014) .........................................9
*Rodney v. Department of Veterans Affairs*,
 2016 WL 6637943 (C.D. Cal. Sep. 28, 2016).........................................3
*Scalia v. County of Kern*,
 2019 WL 4243225 (E.D. Cal. Sep. 6, 2019).........................................23
*Scheurer v. Rhodes*,

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

416 U.S. 232 (1974) ............................................................................. 3

*Simmons v. Sacramento County Superior Court*,
318 F.3d 1156 (9th Cir. 2003) ......................................................... 10

*Smith v. City of Los Angeles*,
2016 WL 10649215 (C.D. Cal. Sep. 26, 2016) ................................. 13

*Smith v. F.B.I.*,
2008 WL 115350 (E.D. Cal. Jan. 10, 2008) ....................................... 3

*Staten v. Calderon*,
No. F052046, 2008 WL 4446526 (Cal. Ct. App. Oct. 3, 2008) ......... 20

*Stoddard-Nunez v. City of Hayward*,
2013 WL 6776189 (N.D. Cal. Dec. 23, 2013) ................................. 25

*Sullivan v. County of Los Angeles,*
12 Cal.3d 710 (1984) .................................................................... 20, 21

*Tennison v. City and County of San Francisco*,
570 F.3d 1078 (9th Cir. 2009) ..................................................... 12, 14

*Ting v. United States,*
927 F.2d 1504 (9th Cir.1991) .......................................................... 11

*Titus v. Canyon Lake Prop. Owners Assn.,*
118 Cal. App. 4th 906 (2004) .......................................................... 18

*Trujillo v. City of Ontario*,
428 F. Supp. 2d 1094 (C.D. Cal. 2006) ............................................ 19

*Turano v. Cty. of Alameda*,
No. 17-CV-06953-KAW, 2019 WL 501479 (N.D. Cal. Feb. 8, 2019) .............. 20

*United States v. Agurs*,
427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ........................ 15

*Venegas v. County of Los Angeles,*
153 Cal.App.4th 1230 (2007) .......................................................... 22

*Wallis v. Spencer*,
202 F.3d 1126 (9th Cir. 2000) ........................................................... 9

*Western Security Bank v. Superior Court*,
15 Cal.4th 232 (1997) ..................................................................... 23

*Woodrum v. Woodward Co.,*
866 F.2d 1121 (9th Cir.1989) ........................................................... 11

*Zahrey v. Coffey*,
221 F.3d 342 (2nd Cir.2000) .......................................................... 8, 9

**Statutes**

42 U.S.C. Section 1983 ........................................................... passim

Cal. Gov. Code § 815 ........................................................................ 16

v

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

Cal. Gov. Code § 820(a) ........................................................................................ 16
California Government Code section 815.2 ........................................................... 16
California Govt. Code § 820.2 ............................................................................... 24
Civil Code section 52.1 ................................................................................... 21, 23
Civil Code section 1714 ........................................................................................ 17
Govt. Code Sections 820.6 and 820.8 ............................................................... i, 19
Govt. Code § 820,8 ............................................................................................... 19
Govt. Code § 821.6 ..................................................................................... 19, 20, 21
§ 815.2(a) .......................................................................................................... 16, 21
§ 820.8 ............................................................................................................. 19, 20

**Rules**

F.R.Civ.P. 12(b)(6) ................................................................................................ 3

**Other Authorities**

2000 Cal. Legis. Serv. Ch. 98 (A.B. 2719) (WEST) ............................................. 22
Cal. Civ. Prac. Civil Rights Litigation, § 3:16 (2019) .......................................... 22
Restatement Second of Agency Section 213 ......................................................... 17

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

### **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Mr. Benavides spent nearly 25 years on death row for a heinous murder he did not commit. Mr. Benavides was arrested on November 18, 1991, for the murder of 21-month-old Consuelo Verdugo. He was found guilty of murder committed with three special circumstances of felony-murder rape, sodomy, and lewd conduct, as well as rape, sodomy, and lewd conduct with the infliction of great bodily injury during those offenses. He was sentenced to death and spent nearly 25 years on death row.

After evaluating the false statements and testimony of coerced witnesses, and the false medical evidence introduced by medical examiners, on March 12, 2018, the California Supreme Court vacated Mr. Benavides' death penalty conviction in its entirety, concluding, in part, that "false evidence was introduced at trial." Defendant Kern County dismissed all charges on April 19, 2018.

As demonstrated below, Plaintiff's Claims against Defendants County of Kern, Carbone, Lopez and Bresson are based on well-established Federal and California law. Further, Defendants' claim of absolute immunity under federal law and statutory immunity under California law are without merit. Consequently, the Court should deny Defendants' Motion to Dismiss to enable Plaintiff to proceed with discovery and seek relief for the injustice he has suffered.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

The Second Amended Complaint ("SAC") generally alleges as follows:

Mr. Benavides was convicted of murdering a child based on false medical evidence and an anatomically impossible theory. (SAC, ¶¶ 1, 5, 28-63.) All the experts who testified against Mr. Benavides at his trial (other than Kern County Coroner employee Dr. Dibdin) recanted their trial testimony and indicated that they had never been provided with critical medical records which refuted their

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

prior conclusions. (SAC, ¶ 28.) (Dr. Dibdin did not recant even though evidence presented at the habeas by "the pre-eminent expert in the field of child sexual abuse and sexual assault" (who uniformly is a witness for the prosecution) indicated that Dr. Dibdin's description of "death due to blunt force penetrating injury of the anus 'is so unlikely' that it reaches 'the point of being absurd.'" *In re Figueroa*, 4 Cal. 5th 576, 585, 412 P.3d 356, 363 (2018). As a result, the California Supreme Court vacated Mr. Benavides' death penalty conviction. (*Id.,* SAC, ¶ 3.)

Immediately after the death of his girlfriend's 21-month old daughter (Consuelo Medina), and without any incriminating information against him, Defendants accused Mr. Benavides of raping and sodomizing Consuelo while he was alone with her during a fifteen-minute period. (SAC, ¶ 64.)

Kern County District Attorney Investigator – Defendant Bresson – engaged in a malicious, unlawful campaign to coerce and pressure the baby's mother, Estella Medina, into providing incriminating evidence against Mr. Benavides. (SAC, ¶¶ 68, 71.) To that end, Bresson threatened to – and then did – place Ms. Medina's 9-year-old daughter, Cristina, with Child Protective Services. (SAC, ¶¶ 23, 71.) Bresson took Cristina into custody and Ms. Medina was prohibited from seeing her from before Thanksgiving 1991 until January 1992. (SAC, ¶ 92.) Thereafter, District Attorney Investigator – Defendant Lopez – orchestrated a second removal of Cristina as a means of coercing Ms. Medina into providing false evidence. (SAC, ¶¶ 71-72, 77-82.) At a preliminary hearing, Deputy District Attorney Carbone falsely represented to the court that his office had not orchestrated Cristina's removal. (SAC, ¶¶ 71-72.) Lopez convinced one witness of Mr. Benavides' culpability and enlisted that witness to coerce another witness to (falsely) incriminate Mr. Benavides. (SAC, ¶¶ 73, 87.)

Bresson and Lopez coerced Ms. Medina to recant her favorable previous statements by conditioning her custody of Cristina on inculpating Mr. Benavides.

2

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

(SAC, ¶¶ 74-95.) The Individual Defendants engaged in a coordinated effort to remove Cristina from Ms. Medina's custody until and unless she agreed to testify against Mr. Benavides. (SAC, ¶¶ 90, 95.) Defendants' coercion was never disclosed to Mr. Benavides' counsel. (SAC, ¶ 91.) As a result of Defendants' unlawful actions, Ms. Medina falsely testified against Mr. Benavides. (SAC, ¶¶ 81-82, 94.) The Individual Defendants also failed to disclose exculpatory evidence. (SAC, ¶¶ 132, 140, 175, 182-183, 186, 188.) Moreover, in concert with Bresson and Lopez during the investigation, Carbone (acting in an investigatory capacity) harassed, pressured, coerced and threatened witnesses. (SAC, ¶¶ 176-177.)

## III.   MOTION TO DISMISS STANDARD

"A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint." (*Smith v. F.B.I.*, 2008 WL 115350, *2 (E.D. Cal. Jan. 10, 2008).) "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (*Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974).) "Pursuant to Rule 12(b)(6), a complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory." (*Rodney v. Department of Veterans Affairs*, 2016 WL 6637943, *2 (C.D. Cal. Sep. 28, 2016).) "In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief." (*Craan v. U.S. Army Corps of Engineers*, 2008 WL 62200, *2 (E.D. Cal. Jan. 4, 2008).)

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

## IV. PROSECUTORIAL IMMUNITY DOES NOT BAR THE SECTION 1983 CLAIMS AGAINST DEFENDANT CARBONE.

The SAC's first four claims for relief assert claims pursuant to 42 U.S.C. Section 1983. Defendants argue that each of these claims fail against Defendant Carbone because: (1) the SAC only alleges that Carbone acted in his prosecutorial capacity; and (2) absolute prosecutorial immunity applies. (Dkt. No. 24 at 6-8.) This argument lacks merit.

"Under § 1983, any person may bring a claim against a government official who acts under color of state law to deprive that person of constitutional rights." (*Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999) (*citing* 42 U.S.C. § 1983).) "Although § 1983 does not expressly provide a defense of official immunity, our courts have repeatedly recognized that absolute and qualified immunity shield certain types of official conduct from § 1983 actions." (*Id.*) Accordingly, "prosecutors are absolutely immune from suit when they function as advocates." (*Id.*) "Prosecutors engaged in traditional prosecutorial functions, those activities 'intimately associated with the judicial phase of the criminal process' are absolutely immune from suits under § 1983." (*Id.* (quotation omitted).)

Immunity, however, "is not impenetrable." (*Id.*) Administrative and "police-type" investigative acts are ***not*** entitled to absolute immunity." (*See Patterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2018) (emphasis added).) "***Investigatory or administrative functions*** ... generate only ***qualified immunity***." (*Morley*, 175 F.3d at 759 (emphases added); *see also Genzler v. Longanbach*, 410 F.3d 630, 643 (9th Cir. 2005) (Prosecutors only have qualified immunity "when they perform administrative functions, or 'investigative functions normally performed by a detective or police officer.'").)

Thus, "whether a prosecutor benefits from absolute or qualified immunity depends on which of the prosecutor's actions are challenged." (*Morley*, 175 F.3d at

4

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

759.) In deciding whether prosecutorial immunity applies to a given act, the court looks to "the nature of the function performed, not the identity of the actor who performed it." (*Kalina v. Fletcher,* 522 U.S. 118, 127 (1997) (quotation omitted); *see also Genzler*, 410 F.3d 630, 643 (9th Cir. 2005) (activity is not prosecutorial simply because it is "to some degree related to trial preparation").)

"[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." (*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).) "[A] prosecutor may not assert blanket absolute immunity by labeling all his actions as within a particular prosecutorial function." (*Botello v. Gammick*, 413 F.3d 971, 978 (9th Cir. 2005).) "Almost any action by a prosecutor ... could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive." (*Burns v. Reed*, 500 U.S. 478, 495 (1991).) Rather, courts inquire "whether the prosecutor's actions are closely associated with the judicial process." (*Id.*) The key "question is whether a prosecutor's investigation is of the type normally done by police [qualified immunity]…, or whether an investigation is bound up with the judicial process [absolute immunity]**."** *Genzler*, 410 F.3d. at 638.

Moreover, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." (*Burns v. Reed*, 500 U.S. 478, 486 (1991).) "[T]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." (*Id.* at 486-87.) The Supreme Court has "been quite sparing in [its] recognition of absolute immunity, and ha[s] refused to extend it any further than its justification would warrant." (*Id.* at 487 (citations and quotation marks omitted).)

Absolute immunity does ***not*** apply to the following conduct by a prosecutor:

- Fabricating evidence by "knowingly obtain[ing] false statements *Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001);

5

- Fabricating evidence by "[s]hopping for a dubious expert opinion" (*Id.* at 1009);

- Investigating before empaneling the grand jury (*Id.*);

- Gathering information from a witness and possibly encouraging the witness to lie (even after criminal complaint filed). (*Genzler*, 410 F.3d at 642)

- Intimidating and coercing witnesses into changing their testimony, *Moore v. Valder,* 65 F.3d 189, 194-95 (D.C.Cir.1995) (cited favorably in *Genzler*, 410 F.3d at 638-639 (original emphasis).

Correspondingly, the SAC alleges that Carbone engaged in a variety of investigative and administrative acts which are not subject to absolute prosecutorial immunity. The SAC specifically alleges, *inter alia*:

- "During the times he was investigating Mr. Benavides' case, [Carbone] acted outside the scope of his prosecutorial duties and acted in an investigatory capacity." (SAC, ¶ 13.)

- "Carbone ... while acting in an investigative capacity, ... conferred with experts while they were developing their opinions, encouraging them to reach conclusions that he knew or should have known were false ...." (SAC, ¶ 140.)

- Carbone "harassed UCLA witnesses and pressured them to give statements regarding the case, thereby acting as an investigator by engaging in conduct more often associated with law enforcement." (SAC, ¶ 176.)

- Specifically, "Carbone became very hostile, raised his voice at the witnesses, and was verbally abusive towards them. He engaged in these actions in his investigative capacity." (SAC, ¶ 176.)

6

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

- Carbone coerced and threatened witnesses Harrison and Ridling. (SAC, ¶ 177.)
- Under Carbone's supervision, police and DA investigators coerced a key witness into giving false testimony by threatening to and placing the witness' child in protective services. (SAC, ¶¶ 71-82; 90-91, 94-95.)
- Under Carbone's supervision, DA Investigators coerced false testimony from a child witness – the same child who was placed in protective services. (SAC, ¶¶ 83-89.)
- Carbone falsely represented that his office had "absolutely nothing" to do with the improper removal of a child from his mother (in order to coerce false testimony). (SAC, ¶ 72.)
- Withheld exculpatory medical records from expert witnesses to elicit false conclusions that they would not have reached otherwise. (SAC, ¶¶ 46, 47, 50, 52, 53, 55.)[1]

These acts  do not trigger absolute immunity as they are not "intimately associated with the judicial phase of the criminal process." Carbone: (1) supervised and directed the creation of false testimony from experts, by withholding key medical records which prevented them from having a complete and accurate understanding of the facts; (2) coerced false testimony from a mother and daughter by having child protective services take custody of the child – more than once – to

---

[1] Upon reviewing the full medical record, the prosecution's medical experts recanted their testimony and the California Supreme Court vacated Mr. Benavides' conviction – without an evidentiary hearing – concluding that it was obtained based on false evidence. (SAC, ¶ 3, 28.) Before the Supreme Court issued its final decision, the Department of Corrections and Rehabilitation conceded that false evidence was introduced at trial and that Mr. Benavides' convictions must be vacated. (SAC, ¶¶ 198-199.)

7

coerce false testimony; (3) used child protective services to coerce testimony unrelated to the judicial phase of the criminal process; and then  (4) falsely represented that his office was not involved in removing Cristina from her mother. In short, the SAC contains ample allegations that Carbone acted in his investigatory and administrative capacities. As noted above, Defendants bear the burden of demonstrating that absolute immunity is justified for the functions at issue. (*See Burns*, 500 U.S. at 486.) Defendants have utterly failed to do so.

Moreover, the fact that Defendant Carbone both engaged in wrongful investigative conduct and then used the fruits of that conduct as evidence (e.g., Estela Medina's coerced testimony) does not cloak him in prosecutorial immunity. "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, … the immunity that protects them is also the same." *Buckley v. Fitzsimmons*, 509 U.S. 259, 276, 113 S. Ct. 2606, 2617, 125 L. Ed. 2d 209 (1993). While the presentation at trial may not be directly actionable, the prosecutor's foundational investigative conduct is. *See Zahrey v. Coffey*, 221 F.3d 342 (2nd Cir.2000) (defendant prosecutor could be held liable for conspiring to develop false evidence during the investigative phase of the criminal case even though his use of that same evidence during the prosecutorial phase was entitled to absolute prosecutorial immunity). It would be "a perverse doctrine of tort and constitutional law that would hold liable the fabricator of evidence who hands it to an unsuspecting prosecutor but exonerate the wrongdoer who enlists himself in a scheme to deprive a person of liberty." *Id.* at 353-354.[2]

---

[2] While the Ninth Circuit has not directly addressed *Zahrey* in this context, other

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

For these reasons, the Court should deny Defendants' motion to dismiss the section 1983 claims asserted against Carbone.

## V.   CALIFORNIA STATUTORY IMMUNITY DOES NOT BAR THE SECTION 1983 CLAIMS

The SAC's first four claims for relief assert claims pursuant to 42 U.S.C. Section 1983. The Individual Defendants argue that these federal claims are barred by statutory immunity under California law. (Dkt. No. 24 at 9-10.) This is simply wrong. "Immunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations." (*Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 2000); *see also Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 ... cannot be immunized by state law."); *Riese v. County of Del Norte*, 2014 WL 4089195, *6 (N.D. Cal. Aug. 19, 2014) ("Section 821.6 does not immunize state officials from Section 1983 actions."); (*MK Ballistics Systems v. Simpson*, 2007 WL 2022025, *5 (N.D. Cal. July 9, 2007) (Section 821.6 "does ***not*** bar claims under 42 U.S.C. § 1983.") (emphasis added).)[3]

---

circuits have since agreed with it. *See, e.g., Fields v. Wharrie*, 740 F.3d 1107, 1113–14 (7th Cir. 2014) (quoting *Buckley v. Fitzsimmons, supra*, 509 U.S. at 275–76); *Zahrey v. Coffey*, 221 F.3d 342, 349, 354 (2d Cir. 2000); *McGhee v. Pottawattamie County*, 547 F.3d 922, 932–33 (8th Cir.2008); *Moore v. Valder*, 65 F.3d 189, 194–95 (D.C.Cir.1995). *See also Michaels v. McGrath,* 531 U.S. 1118, 121 S. Ct. 873, (Mem)–874) (2001) (Justice Thomas dissenting from denial of petition for writ of certiorari, and expressly agreeing with the decision in *Zahrey* "that a plaintiff does state a claim under § 1983 when he shows that prosecutorial misconduct in gathering evidence has led to a deprivation of his liberty. The intervention of a subsequent immunized act by the same officer does not break the chain of causation necessary for liability."

[3] To the extent Defendants argue that state immunities bar state claims, they are discussed below.

9

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

## VI.   THE SAC ADEQUATELY ALLEGES CONSPIRACY UNDER FEDERAL LAW

Mr. Benavides' second claim alleges that the Individual Defendants jointly conspired and agreed to deprive Mr. Benavides of his rights under the Fifth and Fourteenth Amendments to the United States Constitution by creating and submitting false evidence, resulting in the presentation of false evidence at Mr. Benavides' criminal trial and depriving Mr. Benavides of his liberty. (SAC, ¶¶ 225-226.)

Defendants argue that this claim fails because the SAC fails to allege either: (1) "particularized factual details" concerning the alleged conspiratorial planning; or (2) "racial, ethnic, or other class-based invidiously discriminatory animus." (Dkt. No. 24 at 10.) Defendants' argument is utterly without merit.

*First*, Defendants' "particularized factual details" is based entirely on a single inapposite authority – *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156 (9th Cir. 2003). There, the court held that plaintiff's counsel could not pursue a section 1983 claim "against a lawyer in private practice who was not acting under color of state law." (*Id.* at 1161.) The *Simmons* Court specifically held that "conclusory allegations" that a private actor was "conspiring with state officers" were insufficient. (*Id.*) *Simmons*, in turn, cited *Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir.1991) for the proposition that more than "conclusionary allegations" was required to "consider a private party a state actor for the purposes of § 1983." (*Id.*) Here, in contrast, it is undisputed that the Individual Defendants are state actors. (*See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 n.18 (1982) ("[S]tate employment is generally sufficient to render the defendant a state actor.").) Thus, the pleading requirements necessary to find a private individual acted under color of state law are inapplicable here. In short, Defendants cite no

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

authority to support their assertion that the SAC must allege the conspiracy with "particularized factual details."

***Second***, the SAC contains ample conspiracy allegations. (SAC, ¶ 20 (each the co-conspirator of the other), ¶ 226 (Individual Defendants "conspired and agreed"; and each act of false evidence was an overt act in "in furtherance of said conspiracy").) Despite Defendants' contention that "nowhere… does Plaintiff describe the purportedly false nontestimonial evidence" Defendants helped create (Dkt. No. 24 at pg. 11), the SAC is replete with allegations setting forth the concrete steps taken by the Individual Defendants in furtherance of the conspiracy, including: (1) failing to disclose exculpatory evidence; (2) coercing Ms. Medina to provide false testimony by *twice* placing her daughter with Child Protective Services; (3) convincing one witness of Mr. Benavides' culpability and enlisting that witness to coerce another witness to (falsely) incriminate Mr. Benavides; (4) coercing Ms. Medina to recant her previous favorable statements about Mr. Benavides; and (5) failing to disclose the coercion to Mr. Benavides' counsel. (SAC, ¶¶ 23, 68, 71-95, 32, 140, 175, 182-183, 186, 188, 283-284.) The Complaint also alleges joint intimidation of witnesses at UCLA.

While the Complaint does not contain allegations of meetings, a conspiracy allegation requires only "the existence of an express *or implied* agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. United States,* 927 F.2d 1504, 1512 (9th Cir.1991) (emphasis supplied). In addition, there must be "an agreement or *meeting of the minds* to violate" Plaintiff's constitutional rights. *Woodrum v. Woodward Co.,* 866 F.2d 1121, 1126 (9th Cir.1989) (emphasis supplied). "A formal agreement is not necessary; an agreement may be inferred from the defendant's acts pursuant to this scheme or other circumstantial evidence." *Avalos v. Baca,* 517 F. Supp. 2d 1156, 1169–70 (C.D. Cal.

11

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

2007), *aff'd,* 596 F.3d 583 (9th Cir. 2010). Here, the Complaint is replete with allegations of coordinated and joint actions by and among the Defendants that give rise to the inference that there was an agreement to engage in a variety of conduct that violated Plaintiff's rights, including withholding evidence obtained in an investigative capacity, witness intimidation and coercion, and eliciting false expert evidence.

*Finally*, Defendants are flatly mistaken in arguing that Mr. Benavides must allege invidious discriminatory animus to prevail on his conspiracy claim. The conspiracy claim alleges that Defendants deprived Mr. Benavides of his liberty in derogation of his Constitutional rights under the Fifth and Fourteenth Amendments. (SAC, ¶ 226.) The SAC also details the specific actions undertaken which led to the violation of these rights. (*See, e.g.*, SAC, ¶¶ 71-82; 83-89; 90-91, 94-95, 140, 176-178.) The SAC need not allege anything further (and certainly not invidious discriminatory animus). Further, Defendants are apparently confused about Plaintiff's claims since they address "a conspiracy for the purpose of depriving the plaintiff of the equal protection of the law" although Plaintiff has not alleged an equal protection violation.

Because the SAC alleges a valid conspiracy, the Court should deny Defendants' challenge to this claim.[4]

## VII.   THE SAC ADEQUATELY ALLEGES A RECKLESS INVESTIGATION

Courts have recognized a "substantive due process cause of action for reckless investigation ...." (*Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008); *see also Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009) ("[A] § 1983 plaintiff must show that police officers acted with

---

[4] The Individual Defendants also argue that statutory immunity bars the conspiracy claim. (Dkt. No. 24:11.) That argument fails for the same reasons set forth above. (*See supra*, Section 5.)

12

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

deliberate indifference to or reckless disregard for an accused's rights or for the truth ....").) In such cases, "the liberty interest at stake [is] the 'interest in obtaining fair criminal proceedings.'" (*Amrine*, 522 F.3d at 833 (quotation omitted).) "The test for whether state officers' actions violate this protected liberty interest is whether those actions **shock the conscience**." (*Id.* (emphasis added).) "Where state officials 'have the opportunity to deliberate various alternatives prior to selecting a course of conduct, such action violates due process if it is done recklessly.'" (*Id.* at 833-34 (quotation omitted).) "To establish a violation of this right by a botched investigation, [plaintiff] must show that [defendants] intentionally or recklessly failed to investigate, thereby shocking the conscience." (*Id.* at 834; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."); *Smith v. City of Los Angeles*, 2016 WL 10649215, *14 (C.D. Cal. Sep. 26, 2016) ("Substantive due process imposes a standard of deliberate indifference or reckless disregard for an accused's rights or for the truth.").)

While cases addressing reckless investigation have used the "shocks the conscience" standard, we begin our discussion with that standard. However, recent developments in due process jurisprudence suggest that is the incorrect standard for assessing police conduct in fulfilling their normal duties. Specifically, the Supreme Court's decision in *Kingsley v. Hendrickson*, ⸺ U.S. ⸺, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), and the Ninth Circuit's *en banc* decision in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016), and cases following them, suggest that the correct standard is objective deliberate indifference or recklessness.  In *Kingsley*, the Supreme Court ruled that "a pretrial detainee must show only that the force purposely or knowingly used against him

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

was objectively unreasonable." 135 S. Ct. at 2473. Interpreting *Kingsley*, the Ninth Circuit decision in *Castro* extended the objective standard to failure-to-protect claims, reasoning, in part, that "Section 1983 itself 'contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right." *Castro*, 833 F.3d at 1069. Subsequently, the Ninth Circuit extended that analysis to claims of inadequate medical care by pretrial detainees. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1123 (9th Cir. 2018). Since Plaintiff's due process claim is a denial of a fair trial claim, which is based on a deliberate indifference/reckless disregard standard (*see, e.g., Tennison*, 570 F.3d at 1089), objective deliberate indifference/reckless disregard is the proper standard, not "shocks the conscience."

Circumstances which indicate reckless or intentional failure to investigate, even under the shocks the conscience standard, include: "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." (*Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009).)

The SAC's Fourth Claim for Relief alleges that the Individual Defendants recklessly conducted the investigation into Consuelo Verdugo's death by, *inter alia*: (1) procuring and relying on false evidence (and unreliable evidence); (2) coercing and intimidating witnesses; (3) removing a child from her mother in order to obtain (false) incriminating testimony; (4) hiding and distorting evidence; (5) suppressing exculpatory evidence; (6) falsifying evidence; and (7) failing to disclose their witness coercion. (SAC, ¶ 237.) The SAC alleges specific instances of reckless conduct. (SAC, ¶¶ 23, 68, 71-95, 32, 140, 175-178, 182-183, 186, 188.)

Defendants – without citing any authority or referencing the SAC's allegations – argue that this cause of action "fails to allege a sufficient violation of

14

[Mr. Benavides'] due process rights ...." (Dkt. No. 24 at 11.) In light of the foregoing authorities, this conclusory argument is untenable.

Defendants also argue that Bresson and Lopez are DA Investigators with "no inherent authority" which would "provide discretion" regarding the decision to prosecute Mr. Benavides. (Dkt. No. 24 at 12.) Numerous cases hold that, "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is [actionable] under 42 U.S.C. § 1983." *Ricciuti v. New York City*, 124 F.3d 123, 130 (2d Cir. 1997) (quoting *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)) (cited and quoted favorably in *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1242 (9th Cir. 2015)); *see also Devereaux v. Abbey,* 263 F.3d 1070, 1074-75 (9th Cir.2001) (en banc) ("there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government"; "the wrongfulness of charging someone on the basis of deliberately fabricated evidence is … obvious"). If Defendant's contention that the lack of authority to initiate prosecution prevents civil liability were correct, none of these cases would be correct because none assume or require such authority. Defendants (again) cite no authority holding that a DA Investigator cannot be held liable for a reckless investigation. Moreover, the SAC contains specific allegations which supports such a claim against these individuals. (SAC, ¶¶ 71-73, 76-77, 89, 94, 194 (Bresson and Lopez coerced Ms. Medina into providing false testimony by placing her daughter into Child Protective Services and coerced other witnesses).)[5]

---

[5] Finally, Defendants argue that Bresson and Lopez are entitled to statutory immunity under California law. (Dkt. No. 24 at 12.) As detailed above, this claim fails as state law cannot provide immunity for a federal civil rights violation. (*See supra*, Section 5.) As to state law, that issue is addressed in Section VIII(B).

15

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

## VIII.  THE SAC ADEQUATELY ALLEGES A NEGLIGENT HIRING/SUPERVISION CLAIM

### A.  PLAINTIFF NEED NOT ESTABLISH A SPECIAL RELATIONSHIP IN A NEGLIGENT HIRING/SUPERVISION/TRAINING CLAIM WHERE THE NEGLIGENCE IS THAT OF THE ENTITY'S EMPLOYEE IN THE COURSE AND SCOPE OF EMPLOYMENT.

The seventh claim for relief asserts a negligent hiring/supervision claim against the County pursuant to California Government Code section 815.2. In California, "all government tort liability must be based on statute." (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785 n.2; *see also Cal. Gov. Code* § 815. "[A] public employee is liable for injury caused by his act or omission to the same extent as a private person." (*Cal. Gov. Code* § 820(a).) A public entity "is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would ... have given rise to a cause of action against that employee...." (*Id.*, § 815.2(a).) In short, a "public entity is vicariously liable for any injury which its employee causes to the same extent as a private employer." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 868 (citations and quotation omitted).)

Defendants incorrectly argue that the negligent hiring/supervision claim fails because there is no "special relationship" between the County (and its prosecutorial employees) and Mr. Benavides as required by section 815.2. (Dkt. No. 24 at 13.) They rely on *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 270 P.3d 699 (2012) and *de Villers v. City of San Diego*, 156 Cal. App. 4th 238, 243 (2007). In *Hart*, the California Supreme Court concluded that a school district could be held liable for sexual abuse by a teacher based on the special relationship between the school and the student. This was so because ordinarily sexual abuse by an employee is not within the course and scope of employment, and thus would not

16

be conduct for which the employer would be liable. *Hart* explained that the school owed a general duty of "ordinary care," the failure of which gives rise to a claim for vicarious liability, 53 Cal. 4th at 869. "In addition," the school district has a "special relationship" with the student "imposing obligations beyond what each person generally owes others under Civil Code section 1714" and encompassing protection of "foreseeable injury at the hands of third parties." *Id.* at 870. Essentially, the Court concluded that, due to the special relationship, the school district would be vicariously liable for conduct outside the course and scope of the teacher's employment. In *de Villers*, in contrast, the county was not liable for the county toxicologist's murder of her husband using lethal drugs taken from the county coroner's office where the toxicologist worked because, "as a general rule, citizens do not have a duty to prevent criminal attacks by third parties," which this was (like Hart) but here there was no special relationship. These cases deal with when an entity is liable for **criminal** conduct by employees outside their normal duties.

The general rule for ordinary conduct carried out as part of one's duties is that there is vicarious liability, and the entity is liable for its failures in hiring, training and supervision. *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 836 (1992). "California follows the rule set forth in the Restatement Second of Agency Section 213, which provides '[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to others." *Ibid. (*quoting Restatement). Liability for negligent supervision and training occurs when the employer fails to ensure that its employee properly performed his or her duties and the employer had knowledge that the employee was a person who could not be trusted to act properly without being supervised. *Garcia ex rel. Marin v. Clovis*

17

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

*Unified Sch. Dist*, 627 F. Supp. 2d 1187, 1206–07, 1206–07 (E.D. Cal. 2009). "A plaintiff alleging negligent training under California law must show that the employer negligently trained the employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff." *Ibid.*

Even if a special relationship were required –which it is not – Plaintiff has established such a relationship because there exists a well-established "special relationship between jailers and prisoners that is equally applicable to officers of the law who take arrestees into custody." (*Lum v. County of San Joaquin*, 756 F.Supp.2d 1243, 1254 (E.D. Cal. 2010).) "[A] typical setting for the recognition of a special relationship is where 'the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare.'" *Giraldo v. Department of Corrections & Rehabilitation,* 168 Cal.App.4th 231, 245-46 (2008). The phrase "special relationship" is "simply a label expressing the conclusion that the facts, considered in light of the pertinent legal considerations, support the existence of a duty of care." *Titus v. Canyon Lake Prop. Owners Assn.,* 118 Cal. App. 4th 906, 912 (2004).

Here, the SAC contains sufficient allegations which support the conclusion that Defendants had a "special relationship" with Mr. Benavides. The SAC alleges as follows: The County and its employees acted negligently in hiring, retaining, and promoting the Individual Defendants (and failing to train and supervise them). (SAC, ¶ 273.) Mr. Benavides' conviction, sentencing, and wrongful imprisonment were the direct result of the County's negligent hiring, supervision and failure to train the Individual Defendants. (SAC, ¶ 274.) Such allegations sufficiently allege a special relationship between the County (and its employees) as the County had significant control over Mr. Benavides' life and liberty and Mr. Benavides was

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

particularly vulnerable and highly dependent upon the County to conduct a fair and proper investigation.

**B.    GOVT. CODE SECTIONS 820.6 AND 820.8 DO NOT PROVIDE IMMUNITY FOR SUPERVISORS**

Defendants argue that statutory immunities under California bar the negligent hiring/training/supervision claim against the County. (Dkt. No. 24 at 9-10, 12-13.) This claim fails. While it is true that Govt. Code § 821.6 provides broad immunity for investigative and prosecutorial conduct, the negligent hiring/training/supervision claim is not based on the investigative or prosecutorial conduct of the supervisors. It is rather based on the supervisors' failure to properly train and supervise their employees. "Immunity under section 821.6 has been interpreted as providing immunity for officers conducting investigations." *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1123–25 (C.D. Cal. 2006), *aff'd sub nom. Bernhard v. City of Ontario*, 270 F. App'x 518 (9th Cir. 2008). *See also, e.g., Amylou R. v. Cty. of Riverside*, 28 Cal. App. 4th 1205, 1209–12, 34 Cal. Rptr. 2d 319, 321–23 (1994) (821.6 applies to "conduct … committed by the officers in the course of investigating crimes"). The complaint does not allege that the supervisors for whose conduct the County is liable themselves engaged in investigatory or prosecutorial conduct. Thus, 821.6 immunity does not apply.

As to Govt. Code § 820,8, it provides, "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person." California law does provide for respondeat superior liability for negligent supervision and training. In *Johnson v. Baca*, No. CV 13-4496 MMM (AJWx), 2014 WL 12588641, at *17 (C.D. Cal. Mar. 3, 2014) the district court found that § 820.8 immunity did not apply where the plaintiff sought to hold a sheriff liable based on his failure to implement adequate policies and sufficiently train staff to avoid violation of inmates' rights. In other words, the plaintiff sought to hold the

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

defendant "personally liable for his conduct as a supervisor." *Id.*; *see also Doe v. Regents of Univ. of Cal.*, No. CIV. S-06-1043 LKK/DAD, 2006 WL 2506670, at *5 (E.D. Cal. Aug. 29, 2006) (denying motion to dismiss on § 820.8 immunity grounds where the plaintiffs' theory of liability was based on the defendant's direct actions as a supervisor); *Phillips v. Cty. of Fresno*, No. 1:13-cv-538 AWI BAM, 2013 WL 6243278, at *13 (E.D. Cal. Dec. 3, 2013) ("Plaintiffs' complaint ... allege[s] the direct participation of the supervisory Defendants in Plaintiffs' harms based on the failure to carry out various managerial functions to prevent the harm, including adequate discipline, training, supervision and the failure to promulgate appropriate policies. Thus, there is no apparent applicability of section 820.8."); *Staten v. Calderon*, No. F052046, 2008 WL 4446526, at *8 (Cal. Ct. App. Oct. 3, 2008) ("the immunity provided by section 820.8 does not extend to claims of negligent training and supervision")[6]; *Turano v. Cty. of Alameda*, No. 17-CV-06953-KAW, 2019 WL 501479, at *4 (N.D. Cal. Feb. 8, 2019) (denying motion to dismiss under § 820.8 for claim of negligent supervision and discipline for failures to follow adopted policies).[7]

### C.    SECTION 821.6 IMMUNITY DOES NOT APPLY TO FALSE IMPRISONMENT RESULTING FROM DENIAL OF A FAIR TRIAL, AND ALTERNATIVELY IS LIMITED TO MALICIOUS PROSECUTION.

Plaintiff acknowledges that California cases have frequently applied 821.6 immunity broadly. *See, e.g., Amylou R. v. Cty. of Riverside*, 28 Cal. App. 4th 1205, 1209–12, 34 Cal. Rptr. 2d 319, 321–23 (1994). However, the California Supreme Court's expressly held in *Sullivan v. County of Los Angeles,* 12 Cal.3d 710, 719 (1984) that § 821.6 does not apply to false arrest or imprisonment. While *Sullivan*

---

[6] Although unpublished state appellate decisions have no precedential value, they may be cited as persuasive authority. *See Emp'rs Ins. Of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

[7] While there do not appear to be cases addressing supervisors and § 821.6, the analysis adopted and discussed here for §820.8 immunity equally applies to § 821.6.

20

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

involved an imprisonment for holding a person after the charges had been dismissed, which the sheriff knew or should have known of the dismissal, the analysis equally applies to the investigators Bresson and Lopez who engaged in conduct that deprived Plaintiff of a fair trial, as a result of which he was wrongly incarcerated for decades. Although no California case has addressed this issue, the logic of the application of *Sullivan* is clear. Alternatively, Plaintiff submits that the broad reading of § 821.6 is inconsistent with the explanation in *Sullivan* that the "history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability ***only for malicious prosecution* ....**") (emphasis added). *See Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) ("[w]e think the California Supreme Court would adhere to *Sullivan* even though California Courts of Appeal have strayed from it"). §821.6 immunity, properly interpreted, is limited to malicious prosecution. [8]

## IX.   THE SAC ADEQUATELY ALLEGES A GROSS NEGLIGENCE CLAIM

Defendants argue that the gross negligence claim fails because the County cannot be held directly liable absent statutory authority. (Dkt. No. 24 at 13-14.) But this argument fails to recognize that the County can be held vicariously liable for the conduct of the Individual Defendants. (*See Cal. Gov. Code* § 815.2(a); *C.A.*, 53 Cal.4th at 868.) Plaintiff has not alleged direct liability. Regarding statutory immunity, Sections VIII(B) and (C) explain why they do not apply.

## X.   THE SAC ADEQUATELY ALLEGES A BANE ACT CLAIM

The ninth claim for relief asserts a claim against the individual Defendants under the Tom Bane Civil Rights Act, Civil Code section 52.1. Defendants argue

---

[8] Defendants' reliance on *Olvera v. County of Sacramento*, 932 F.Supp.2d 1123 (E.D. Cal. 2013), is misplaced. That decision did not discuss *Sullivan* and is inconsistent with the more recent Ninth Circuit decision in *Garmon*.

Plaintiff's Opposition To Defendants' Motion To Dismiss Second Amended Complaint

that the SAC fails to state a Bane Act claim because: (1) the Bane Act does not apply retroactively; and (2) the SAC fails to allege coercion; and (3) the Individual Defendants are entitled to statutory immunity. (Dkt. No. 24 at 14-16.) Each argument lacks merit.

### A.   NO RETROACTIVITY QUESTION EXISTS

The Bane Act "was enacted in 1987 to address hate crimes" and "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation, or coercion." (*Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quotations omitted); *see also Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 338 (The Bane Act was originally enacted "to stem a tide of hate crimes.").) "The 1987 legislation set out all the principal features of the current statute except that it did not provide for the award of damages." (Robert D. Links, Cal. Civ. Prac. Civil Rights Litigation, § 3:16 (2019); *see also Venegas v. County of Los Angeles* ("*Venegas 2*") (2007) 153 Cal.App.4th 1230, 1242 ("As originally enacted the Bane Act did not provide for a damages remedy.").)

In 1990, the Legislature amended the Bane Act "to allow 'any individual' whose exercise or enjoyment of constitutional or statutory rights has been interfered with by 'threats, intimidation, or coercion' to sue the perpetrator for damages." (*Venegas 2*, 153 Cal.App.4th at 1242 (quotation omitted).) In 2000, the Legislature again "amended the Bane Act and *clarified* that it provided plaintiffs with a cause of action whether or not they were themselves members of a protected class." *Estate of Pimentel v. City of Ceres*, 2019 WL 2598697, *8 (E.D. Cal. June 25, 2019) (emphasis added); *accord, Hous. Rights Ctr., Inc. v. Moskowitz*, 2004 WL 3738293, at *3 (C.D. Cal. Sept. 20, 2004). The legislative findings for the amendment unequivocally establish that this was a "clarification" of existing law. *See* 2000 Cal. Legis. Serv. Ch. 98 (A.B. 2719) (WEST) ("It is the intent of the

22

Legislature in enacting this act to *clarify* that an action brought pursuant to Section 52.1" does not require membership in a protected class) (emphasis added).

The events at issue in this action took place on and after November 18, 1991. Because the 2000 amendment merely clarified existing law, it did not change the law and did not raise retroactivity concerns. "If [an] amendment merely clarified existing law, no question of retroactivity is presented." (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471.) "[A] statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243.) "Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (*Id.*)

### B.    THE SAC ADEQUATELY ALLEGES SPECIFIC INTENT

The Bane Act creates a cause of action against a person if that person "interferes by threat, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." (*Cal. Civ. Code* § 52.1.) To state a claim under the Bane Act, the plaintiff must allege a "specific intent" to violate plaintiff's constitutional rights. (*Reese*, 888 F.3d at 1043.) A Bane Act claim does ***not***, however, require an allegation of "threat, intimidation or coercion" independent from the constitutional violation alleged. (*Id.*) Rather, plaintiff can demonstrate "specific intent under the Bane Act" merely by alleging that defendants "acted with ***reckless disregard*** for [plaintiff's] rights." (*Scalia v. County of Kern*, 2019 WL 4243225, *9 (E.D. Cal. Sep. 6, 2019) (emphasis added).)

Here, the SAC adequately alleges that the Individual Defendants acted with the specific intent to violate Mr. Benavides' constitutional rights (or at least with reckless disregard for those rights). The SAC specifically alleges that: Defendants interfered with Mr. Benavides's constitutional rights by, *inter alia*: (1) failing to

23

disclose exculpatory evidence; (2) coercing Ms. Medina to provide false testimony by *twice* placing her daughter with Child Protective Services; (3) convincing one witness of Mr. Benavides' culpability and enlisting that witness to coerce another witness to (falsely) incriminate Mr. Benavides; (4) coercing Ms. Medina to recant her previous favorable statements about Mr. Benavides; and (5) failing to disclose the coercion to Mr. Benavides' counsel. (SAC, ¶¶ 23, 68, 71-95, 32, 140, 175, 182-183, 186, 188, 283-284.) These allegations more than satisfy the pleading requirements of a Bane Act claim as they support the conclusion that Defendants acted with the intent to violate Mr. Benavides' constitutional rights or, at a minimum, with reckless disregard of those rights.

### C.   STATUTORY IMMUNITY DOES NOT BAR THE CLAIM

Finally, the Individual Defendants argue that they are immune from a Bane Act claim under California Govt. Code § 820.2. "Section 820.2 immunity protects a public employee's exercise of discretion." (*Koistra v. County of San Diego*, 310 F.Supp.3d 1066, 1087 (S.D. Cal. 2018). Section 820.2 immunity "requires a finding that [defendants'] conduct was objectively reasonable." (*Id.*, 310 F.Supp.3d at 1087.)

This "discretionary immunity" applies only to "deliberate and considered policy decisions." *Buckhalter v. Torres*, 2019 WL 3714576, *12 (E.D. Cal. Aug. 7, 2019) (quoting *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 981-82).) "In defining immune discretionary acts, courts draw the line between 'planning' and 'operational' functions of government, reserving immunity for those basic policy decisions which have been expressly committed to coordinate branches of government, and as to which judicial interference would thus be unseemly." (*Gogue v. City of Los Angeles*, 2010 WL 11549706, *16 (C.D. Cal. June 15, 2016).) "Routine, discretionary decisions part of a person's normal job duties are not covered by this immunity." (*Id.*) "[I]mmunity under section 820.2 turns on the

24

reasonableness of the conduct complained of, not simply whether or not a public employee exercised his or her discretion." *Stoddard-Nunez v. City of Hayward*, 2013 WL 6776189, *10 (N.D. Cal. Dec. 23, 2013). "Particularized allegations that "Defendants fabricated evidence" or "conspired against Plaintiff," which are alleged in detail in the complaint, establish the requisite intent. (*Acevedo v. City of Farmersville*, 2019 WL 3003996, *14 (E.D. Cal. July 10, 2019).)

Defendants offer no argument in support of the immunity claim (Dkt. No. 24 at 16), which is sufficient reason to reject their contention. Regardless, the SAC asserts no policy-making activities by Bresson or Lopez. Rather, the SAC alleges routine operational, objectively unreasonable acts (e.g., coercing witness testimony and failure to disclose exculpatory evidence). Discretionary immunity does not apply.

## XI.    CONCLUSION

For all these reasons, the Court should deny Defendants' motion to dismiss in its entirety.

DATED: October 22, 2019                Respectfully submitted,

KAYE, McLANE, BEDNARSKI &
    LITT, LLP

ZAVALA LAW GROUP, P.C.

LAW OFFICE OF DO KIM APLC,

By:  / s /  *Barrett S. Litt*
    BARRETT S. LITT
    RONALD O. KAYE
    SALOMON ZAVALA
    DO KIM
Attorneys for Plaintiff
VICENTE BENAVIDES FIGUEROA

25