UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENTE BENAVIDES FIGUEROA,<br><br>Plaintiff,<br><br>v.<br><br>KERN COUNTY, et al.,<br><br>Defendants. | No. 1:19-cv-00558-DAD-JLT<br><br>ORDER DENYING MOTION TO STRIKE CERTAIN ALLEGATIONS IN PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>(Doc. No. 23) |

This matter is before the court on defendants' motion to strike plaintiff's factual assertions of innocence in his second amended complaint (Doc. No. 19) as well as plaintiff's references to particular child molestation cases that occurred in Kern County. This matter came before the court on November 19, 2019 for a hearing on defendants' motion to strike and motion to dismiss. (Doc. No. 36.) Attorneys Andrew Thomson, Kyle Holmes, and Kevin Gilbert appeared telephonically on behalf of defendants. Attorneys Barrett Litt, Ronald Kaye, James Do Kim, and Salomon Zavala appeared telephonically on behalf of plaintiff. (*Id.*) For the reasons explained below, the court will deny defendants' motion to strike.[1]

/////

---

[1] The undersigned apologizes for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district has reached crisis proportion. Unfortunately, that situation sometimes results in the court not being able to issue orders in submitted civil matters within an acceptable period of time. This situation is frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel. A separate order will issue addressing the pending motion to dismiss.

**BACKGROUND**

On November 18, 1991, plaintiff Vincente Benavides Figueroa was arrested and charged with the rape and murder of Consuelo Verdugo, his girlfriend's toddler daughter. (Doc. No. 19 at 4.) Plaintiff was sentenced to death, and he remained on death row for nearly 25 years. (*Id.*) On March 12, 2018, the California Supreme Court granted plaintiff's petition for *habeas corpus* and vacated his death penalty conviction. *See In re Figueroa*, 4 Cal. 5th 576 (2018). The California Supreme Court granted plaintiff's petition upon finding that his conviction was based on false evidence. *Id*.

On August 8, 2019, plaintiff filed his second amended complaint ("SAC") in this civil action against defendants Kern County, City of Delano, Robert Carbone, Gregg Bresson, Ray Lopez, Alfonso Valdez, the estate of Jeffrey Nacua, Sarah Garcia Nacua, Dr. James Dibdin, and DOES 1–10, asserting nine causes of action, including: (i) 42 U.S.C. § 1983 claims for false evidence violations, joint action conspiracy, *Brady* violations, due process violations, and *Monell* liability; (ii) claims under California Government Code § 815.2 for *respondeat superior* and vicarious liability; (iii) gross negligence claims; and (iv) claims under California Civil Code § 52.1. (Doc. No. 19 ("SAC").)

In his complaint, plaintiff alleges the following.[2] Throughout the investigation and prosecution of plaintiff's criminal case, there were concerted efforts by law enforcement detectives, investigators, child protective services, and prosecutors to falsify evidence and influence witnesses to give false testimony. (SAC at ¶ 4.) The Kern County District Attorney's Office and the Kern County Coroner's and Medical Examiner's Office are agencies of Kern County. (*Id*. at ¶ 11.) Kern County employed defendants James Dibdin, Robert Carbone, Gregg Bresson, Ray Lopez and Does 1–5 at all relevant times. (*Id*.)

On the evening of November 17, 1991, Estela Medina and plaintiff brought Ms. Medina's daughter, 21-month old Consuelo Verdugo ("Consuelo"), to the Delano Regional Medical

---

[2] The court will not provide a comprehensive or exhaustive summary of plaintiffs' second amended complaint, which includes 285 lengthy paragraphs spanning 100 pages. Rather, the court summarizes plaintiffs' allegations here and in the analysis section below, focusing on allegations that are relevant to the court's analysis of the pending motion.

1    Center's ("DRMC") emergency room. (*Id*. at ¶ 23.) Estela Medina had left Consuelo and her 9-
2    year old sister Cristina Medina in the care of plaintiff, who was her boyfriend, when she left for
3    work at DRMC, where she was employed as a nurse's aide. (*Id*.) After Estela left, plaintiff gave
4    Cristina permission to visit her friend, who lived in the same apartment complex. Approximately
5    fifteen minutes later, plaintiff called for Cristina to return home. (*Id*. at ¶ 24.) When she arrived,
6    plaintiff was holding Consuelo and told Cristina to call her mother because something was wrong.
7    (*Id*.) Cristina told her mother that Consuelo was pale, sick, and could not breathe. (*Id*. at ¶ 25.)
8    Estela arrived back at her apartment and she and plaintiff drove Consuelo to DRMC. (*Id*.) Over
9    the next week, Consuelo was transferred to the Kern County Medical Center ("KMC") and then
10   to UCLA Medical Center as her condition continued to worsen. She died on November 25, 1991
11   as a result of internal injuries. (*Id*. at ¶ 26.)

12         Every prosecution medical expert (except for defendant Dibdin) later recanted his or her
13   trial testimony that Consuelo had been sexually abused. (*Id*. at ¶ 28.) The medical records from
14   DRMC indicate that Consuelo was initially limp and minimally responsive to external
15   stimulation. (*Id*. at ¶ 29.) There is no indication in the DRMC medical records of any trauma to
16   Consuelo's genitalia or anus. (*Id*. at ¶ 29.) The forensic pathologist, Dr. Dibdin, falsely
17   identified Consuelo's cause of death in his autopsy report as "blunt force penetrating injury of the
18   anus." (*Id*. at ¶ 34.) Consuelo had five fractured ribs, which Dr. Dibdin believed were caused by
19   tight squeezing during a sexual assault. (*Id*. at ¶ 34.) Dr. Dibdin attributed brain infarcts and
20   brain swelling to Consuelo having been violently shaken. (*Id*.) Dr. Dibdin testified Consuelo's
21   anal injuries were consistent with penile penetration causing acute lacerations and direct
22   abdominal injury. (*Id*.)

23         In support of his habeas petition filed in state court, plaintiff established that the
24   introduction of false evidence at trial resulted in his convictions. (*Id*. at ¶ 35.) Specifically,
25   plaintiff showed that Dr. Dibdin's theory that Consuelo's injuries were caused by anal penetration
26   was both false and medically impossible. (*Id*.) The genital and rectal injuries introduced as
27   evidence at trial were not seen during Consuelo's treatment at DRMC. (*Id*. at ¶ 41.) Instead, the
28   evidence established that the tearing and anal laxity noted during Dr. Dibdin's autopsy had

3

resulted from normal medical procedures. (*Id*. at ¶¶ 36–44.) The medical experts who testified at plaintiff's criminal trial recanted their testimony because they had not been given Consuelo's DRMC medical records or autopsy report before testifying. (*Id*. at ¶ 46.) The Kern County District Attorney's Office provided no explanation during the state habeas proceedings as to why the full medical records had not been provided to these expert witnesses. (*Id*. at ¶ 53.) Over the course of the investigation, Dr. Dibdin provided a wide array of false or misleading medical evidence regarding the injuries Consuelo suffered. (*Id*. at ¶¶ 122–133.)

Lab notes and photographs from Jeanne Spencer, a Kern County Criminalist, that contained dirt, debris, plant fibers, and gravel found on Consuelo's person were not provided to the plaintiff. (*Id*. at ¶ 156.) This evidence was consistent with plaintiff's version of events that he had found Consuelo outside the front door. (*Id*.)

Prevailing practice in Kern County in 1991 was for law enforcement to obtain samples of fluids from suspected sexual assault victims using a law enforcement "rape kit." (*Id*. at ¶ 163.) Contrary to practice, the prosecution asserted at trial that no such sampling was performed in this case. (*Id*.)

Plaintiff alleges that, after his arrest, evidence was systematically falsified throughout the criminal investigation. (*Id*. at ¶ 70.) Officer Valdez and Investigator Bresson were assisted in that investigation by officials and employees from the Kern County District Attorney's Office. (*Id*. at ¶ 69.) Valdez and Bresson coerced and pressured Estela Medina into providing incriminating evidence against plaintiff. (*Id*. at ¶ 71.) Specifically, Valdez and Bresson unilaterally decided to remove Ms. Medina's daughter Cristina from her mother's custody without consulting Child Protective Services ("CPS"). (*Id*.) This effort continued until Ms. Medina provided statements inculpating plaintiff. (*Id*. at ¶ 72–82.) The investigators likewise used coercive and manipulative techniques to convince Cristina to provide allegedly false testimony inculpating plaintiff. (*Id*. at ¶ 87.) Kern County officials withheld from the defense Cristina's DHS/CPS and juvenile court records that demonstrated the coordinated efforts of DHS/CPS workers and law enforcement involved in the investigation of plaintiff to keep Cristina from her mother in order to coerce the testimony of the two witnesses. (*Id*. at ¶ 90.)

1    The Kern County District Attorney's Office obtained over three dozen convictions in
2    molestation cases in the 1980's and early 1990's by coercing witnesses, manufacturing children's
3    statements, withholding evidence of sex abuse examinations and other evidence, and refusing to
4    allow sex abuse exams of alleged victims when those examinations would produce exculpatory
5    evidence.  (*Id*. at ¶ 97.)  The Kern County District Attorney's Office also had no policies in place
6    to ensure that false evidence was not being used; no systems in place to track these child
7    molestation cases; no systems in place to ensure that exculpatory evidence was provided to the
8    defense; and no systems in place to ensure that improper conduct in connection with such
9    prosecutions was disciplined.  (*Id*. at ¶¶ 105, 153.)
10   On September 10, 2019, defendants filed a motion to strike certain language and
11   paragraphs from plaintiff's SAC (Doc. No. 23.)  Specifically, defendants seek to strike references
12   to plaintiff's factual innocence as well as plaintiff's references to certain prior child molestation
13   investigations and cases in Kern County.  (*Id*.)  On October 22, 2019, plaintiff filed an opposition
14   to the motion to strike.  (Doc. No. 28.)  On November 12, 2019, defendants filed their reply to
15   plaintiff's opposition.  (Doc. No. 32.)

## LEGAL STANDARD

17   Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike
18   from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous
19   matter."  Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the
20   expenditure of time and money that must arise from litigating spurious issues by dispensing with
21   those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir.
22   2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).  A decision
23   whether to strike certain material is committed to the sound discretion of the district court.  *Id.*;
24   *Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990).  However,
25   motions to strike are generally disfavored and "should not be granted unless it is clear that the
26   matter to be stricken could have no possible bearing on the subject matter of the litigation."
27   *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citation and quotation
28   marks omitted); *see also Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D.

1  Cal. 2003) ("Motions to strike are generally regarded with disfavor because of the limited
2  importance of pleading in federal practice, and because they are often used as a delaying tactic.").
3  In resolving such motions, the court must view the pleading in a light most favorable to the non-
4  moving party and resolve any doubt as to the relevance of the challenged allegations in favor of
5  the non-moving party. *See In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D.
6  Cal. 2000).

## ANALYSIS

### A.   Motion to Strike Plaintiff's Allegations of Innocence

Defendants move to strike plaintiff's references to his innocence appearing at various points in his SAC. (Doc. No. 23 at 5.) Defendants argue that "[t]he Court should strike all portions of the SAC which allege that Plaintiff is 'innocent' (paragraphs 1,3, and 213) because they are false." (Doc. No 23 at 4.) Defendants contend that this court has the authority to strike pleadings that are false and point to California Penal Code § 851.8(c) to support their contention that plaintiff's references to his innocence should be stricken. (*Id*.) Under that statute, a finding of factual innocence "shall not be made unless the court finds that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made." Cal. Pen Code § 851.8(b). Defendants also argue that under that provision "'[a]ny finding that an arrestee is factually innocent . . . shall not be admissible as evidence in any action.'" (Doc. No 23 at 5) (citing Cal. Pen Code § 851.8(i)(1)). Defendants cite the decision in *Kerner v. Superior Court*, 206 Cal. App. 4th 84 (2012) in support of this argument. (*Id*.) The court in *Kerner* applied § 851.8, stating that "[the criminal defendant] cannot testify at trial in this action that he was found factually innocent by the criminal court and . . . neither the trial court nor the jury may consider evidence of the finding of factual innocence for any purpose." *Id*. Finally, defendants argue that in addition to being immaterial, plaintiff's allegations of actual innocence are "prejudicial towards Defendants." (Doc. 23 at 5.)

Plaintiff counters by arguing that his "innocence is the essence of this case . . .." (Doc. No. 28 at 10.) Plaintiff argues that his innocence goes directly to the issue of damages and that his damages, "including the underlying supporting facts, are properly pled in a complaint." (*Id*. at

6

1    11, 14.) In other words, plaintiff contends that his innocence is an underlying fact he is alleging
2    in support of his damages claim. Plaintiff points to authority for the proposition that "[i]n a
3    motion to strike . . . all allegations alleged in the complaint are deemed to be true and are not
4    subject to factual challenge in the motion." (*Id*.) (citing *Stearns v. Select Comfort Retail Corp*.,
5    763 F. Supp. 1128, 1140 (N.D. Cal. 2010)). Plaintiff contends that he "is entitled to the
6    presumption of innocence and to an award of damages based on his innocence in the absence of a
7    finding by the trier of fact that he would be convicted on proof beyond a reasonable doubt." (*Id*.
8    at 15.) Plaintiff's argument centers around the notion that his "alleged guilt is an affirmative
9    defense on which Defendants have the burden of proof." (*Id*.) (citing *Carey v. Piphus*, 435 U.S.
10   247, 260 (1978)). In support of this argument, plaintiff cites to three unpublished district court
11   minute orders, all of which held that while a plaintiff under circumstances similar to those in the
12   present case is not automatically entitled to a finding of factual innocence, he is entitled to a
13   presumption of innocence in connection with his claim for damages and that the burden of
14   disproving that presumption falls on the prosecution. (*Id*. at 12.) All three orders support
15   plaintiff's contention that although he has not been found factually innocent, he may claim
16   innocence in order to properly allege that he has suffered damages. Finally, plaintiff responds to
17   defendants' references to California Penal Code § 851.8(c) by agreeing that "the statute
18   specifically bars the finding of factual innocence from being admissible in any other proceeding."
19   (*Id*. at 14–15.) However, plaintiff argues that § 851.8 is irrelevant here because there has been no
20   judicial finding of factual innocence in this case. (*Id*. at 15.)
21          In their reply, defendants argue that "[a]ssertions that Plaintiff has been legally exonerated
22   are untrue, irrelevant, and prejudicial . . . ." (Doc. No. 32 at 3.) Defendants contend that the
23   California Supreme Court did not find plaintiff innocent but, rather, "did little other than find that
24   the cause of death could not have occurred as presented in the criminal case and granted a writ of
25   habeas corpus." (*Id*. at 2.) Defendants ask this court to draw a distinction between assertions of
26   innocence and allegations of innocence by concluding that assertions reflect a fact and allegations
27   merely reflect an opinion. (*Id*. at 3.) Finally, defendants note that the minute orders issued by
28   U.S. District Judge A. Howard Matz of the Central District of California addressing this issue and

7

relied upon by plaintiff are not binding authority and that plaintiff's assertions of his factual innocence are irrelevant and prejudicial. (*Id.*)

The arguments advanced in support of the motion to strike by defendants are not persuasive. First, at the heart of this matter is an allegedly wrongful conviction. *See In re Figueroa* 4 Cal. 5th 576 (2018). This court need not determine whether plaintiff is factually innocent of the charges brought against him to resolve the pending motion to strike. It is sufficient to acknowledge that having been granted state habeas relief, plaintiff is entitled to the presumption of innocence. *See Nelson v. Colorado*, __U.S.__, 137 S. Ct. 1249, 1255 (2017). That presumption does not render plaintiff innocent as a matter of fact. Nonetheless, at the pleading stage of this civil action, all allegations of the complaint are deemed to be true. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010); *see also Succession of Wardlaw, Through Representative Owen v. Whitney Nat. Bank*, Civ. A. No. 94-2026, 1994 WL 479183, at *1 (E.D. La. Aug. 30, 1994) (denying a motion to strike and reasoning that "[a]t this stage of the litigation, plaintiff is not required to come forward with evidence of his contentions. He is required merely to give a statement of what he intends to show at trial."); *Brokke v. Stauffer Chemical Co.*, 703 F. Supp. 215, 223 (D. Conn. 1988) ("[A]llegations in a complaint obviously cannot be stricken simply because a defendant challenges their factual basis.").

Second, plaintiff's allegations of his innocence are relevant to both his claim of actual damages as well as to show malice, which supports his claim for an award of punitive damages. (Doc. No. 28 at 14.) No doubt a wrongfully imprisoned person suffers a form of emotional harm significantly greater than that of a factually guilty imprisoned individual. *Carter v. City of Philadelphia*, No. 97-cv-4499, 2000 WL 1016653, at *2–3 (E.D. Pa.) (citing *Carey v. Piphus*, 435 U.S. 247, 263–64 (1978)); *see also Goldstein v. City of Long Beach, et al.*, No. 04-cv-09692-AHM, Order, Doc. No. 419 at *6 (C.D. Cal. Jan. 26, 2010) (actual innocence bears on the extent of emotional damage plaintiff may have suffered during his imprisonment, and is therefore relevant, "based on standard principles of causation and compensation").

/////

8

Third, defendants' reliance on *California Penal Code* § 851.8 and the case law applying that statute is misplaced here.  While § 851.8(i) does state that a defendant may petition the court for an order finding him factually innocent, that statute additionally bars any factual innocence finding from being admissible in any other proceeding.  However, plaintiff has not alleged that there was a judicial finding of his factual innocence.  (*See* Doc. No. 28 at 15.)  Accordingly, neither the decision in *Kerner v. Superior Court*, 206 Cal. App. 4th 84 (2012) nor § 851.8 have any application to the resolution of the pending motion.

Accordingly, the court concludes that plaintiff's assertions of his innocence in the SAC are not redundant, immaterial, impertinent, or scandalous since those allegations will likely bear on the subject matter of this litigation.  *See Whittlestone*, 618 F.3d at 973; *Neveu*, 392 F. Supp. 2d at 1170.  Defendants' motion to strike plaintiff's references to his innocence in paragraphs 1, 3, and 213 of the SAC will therefore be denied.

### B. Motion to Strike References to Molestation Cases in Kern County

Defendants also move to strike plaintiff's references to "a number of child molestation cases prosecuted by the Kern County District Attorney through the eighties and into early nineties where the District Attorney obtained convictions, later thrown out, by allegedly submitting false evidence and testimony." (Doc. No. 23 at 6.)  Specifically, defendants move to strike paragraphs 96 through 101 from the SAC.  Those paragraphs reference the following cases, as they have been characterized by plaintiff.  *Larry McCuan, et al. v. County of Kern, et al.* (Super. Ct. Kern County, 1989, No. 194695) (in which the defendant's stepdaughters were coached to allege their parents abused them and the county withheld evidence of sex abuse exams); *People v. Stoll* (1989) 49 Cal.3d 1136 (where a jury verdict was overturned in part because the prosecution had suggested to child witnesses that they were abused, masked those suggestions in their reports, and relied upon false evidence); series of cases where the Kern County District Attorney relied upon false medical evidence, where coercive interviewing techniques were used on children, or in which audiotapes and transcripts of interviews of children in which they stated that they had not been abused were withheld from the defense.  (SAC ¶¶ 96–101.)

/////

Defendants argue the court should strike reference to these various cases from the SAC because "they have no essential or important relationship to the claim for relief and do not pertain to the issues in question." (*Id.*) Defendants contend that the cases cited differ from plaintiff's because "not one single case involved a murder[.]" (*Id.*) Moreover, defendants state that the molestation cases involved instances of coaching children to give false testimony, which they contend is not at issue in plaintiff's case. (*Id.*) Accordingly, defendants argue "linking the instant case to those child molestation cases provides no helpful background and would unduly prejudice a jury against [them]." (*Id.*) Defendants thus ask this court to strike paragraphs 96–101 of the SAC.

In his opposition to the pending motion to strike, plaintiff asserts that the specific criminal conduct at issue in those earlier prosecutions is not relevant, but rather that "what is relevant is the pattern of misconduct of the Defendant prosecutors and investigators here in fabricating evidence in cases involving accusations encompassing child molestation, withholding evidence, and railroading and convicting people by violating their constitutional rights." (Doc. No. 28 at 16–17.) Plaintiff also contends that defendants' attempt to distinguish the earlier prosecutions referred to in his complaint fails, pointing to his allegations that the defendants coached children to give false testimony in his case and that the victim's older sister Cristina *did* testify at his trial. (*Id.* at 17.) Plaintiff also contends that reference to these other cases is not superfluous background because they help establish a pattern of conduct by defendants that continued in his case and that to prevail on his *Monell* claim he must show such a pattern and practice. (*Id.* at 12–13.) Plaintiff notes that the Ninth Circuit has stated such a pattern and practice "can be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" (*Id.* at 18) (quoting *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233–34 (9th Cir. 2011) (internal quotation marks and citations omitted).

In their reply, defendants argue that reference to these previous criminal and civil child abuse cases is unnecessary for plaintiff to sufficiently allege a *Monell* violation. (Doc. No. 32 at 4.) Defendants believe "it is obvious that Plaintiff will use the allegations of the SAC to depart

10

on an unnecessary investigation into the conduct of every county employee . . . involved in any way with unrelated child abuse cases that were in many instances litigated more than twenty years ago." (*Id*. at 5.)  Defendants assert that for his purposes, "Plaintiff must simply provide factual information to support the Monell claim . . . which Plaintiff has done in alleging the fifth (5th) cause of action." (*Id*.)  Defendants contend they will not use the elimination of these challenged references to attack plaintiff's potential *Monell* claim, pointing to the fact that their motion to dismiss, filed concurrently with this motion to strike, "raises no argument regarding the sufficiency of the Monell allegations." (*Id*.)  Ultimately, defendants contend that this challenged background information is more prejudicial, scandalous, and burdensome than it is supportive of plaintiff's *Monell* claim.

The Ninth Circuit has held that:

> In order to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.

*Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal citations and quotation marks omitted).  One of the ways plaintiff may establish *Monell* liability is to show that the defendant has a "longstanding practice or custom." *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014).  Such circumstances may arise when, for instance, the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees.  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a *Monell* claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted) (quoting *Connick*, 563 U.S. at 61)).

The Ninth Circuit has also held that a plaintiff asserting *Monell* claims may not simply recite the elements of a cause of action but must allege sufficient underlying facts to give fair notice and to enable the opposing party to defend itself effectively. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). In addition, some district courts have required plaintiffs to also identify the particular policy or custom that caused the constitutional violation without resorting to conclusory allegations. *See, e.g.*, *Johnson v. Cate*, No. 1:10-cv-00803-AWI, 2012 WL 1076209, at *3 (E.D. Cal. Mar. 29, 2012) (requiring plaintiff to "describ[e] in detail a county policy that was the moving force behind the alleged constitutional violations"). Other courts have adopted a more lenient pleading standard, holding that while a complaint must include a sufficient quantum of factual material to plausibly suggest the existence of a policy or custom, the policy or custom itself need not be specifically alleged, or may be alleged only in a general fashion. *See Duenez v. City of Manteca*, No. 11-cv-1820-LKK, 2012 WL 4359229, at *9 (E.D. Cal. Feb. 23, 2012) ("Plaintiffs need not articulate the intricacies of the alleged policy further at the pleading stage.").

In any event, a complaint must contain sufficient factual allegations to plausibly suggest a policy or custom, as opposed to merely random, unconnected acts of misconduct. Collectively, the factual allegations of a complaint asserting a *Monell* claim must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1175 (E.D. Cal. 2019) (citing *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 843–44 (S.D. Tex. 2011) ("Allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy."); *Lavenant v. City of Palm Springs*, No. EDCV 17-2267-KK, 2018 WL 3807944, at *4 (C.D. Cal. Aug. 8, 2018) ("Plaintiffs allege sufficient facts to state a claim that this official policy was the 'moving force' behind the constitutional violation by pointing to two past incidents in the City of Palm Springs concerning officer-involved shootings which should have" placed the City on notice of the deficient training of its officers). A plaintiff

may also allege a policy or custom with evidence of repeated constitutional violations.  *See Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995).  Thus, "[a] complaint alleging a *Monell* claim must pair general averments of a policy or custom with particular examples." *Estate of Osuna*, 392 F. Supp. 3d at 1175 (internal quotation marks and citation omitted).

Defendants' argument that the past conduct in other cases is not relevant to plaintiff's *Monell* claim asserted in this case is unpersuasive.  For these purposes, the court discerns no material distinction between a child molestation prosecution case and a case such as plaintiff's in which he was charged with the rape and sodomy of a child in addition to murder.  The distinction drawn by defendants is one that makes no difference.  The allegations of plaintiff's SAC outline a pattern by defendants of fabricating evidence, pressuring witnesses into giving false testimony, and withholding evidence exculpating charged defendants—all of which plaintiff accuses defendants of having done in his criminal prosecution. (Doc. No. 28 at 16–17.)

The court finds that plaintiff's references to misconduct in past criminal prosecutions in Kern County factually support his *Monell* claim for the reasons explained above.  The court further finds that the similarities between the allegations of wrongdoing in those earlier cases and plaintiff's allegations of defendants' wrongdoing in his case create a sufficiently common nexus.  The court therefore concludes that plaintiff's allegations referring to those earlier molestation cases are not for an improper purpose, impertinent, or redundant.  Finally, plaintiff's allegations do not place an unnecessary or unfair burden on the defendants in responding to those allegations.

Defendants' motion to strike will therefore be denied in its entirety.

## CONCLUSION

For the reasons set forth above defendants' motion to strike (Doc. No. 23) is denied.

IT IS SO ORDERED.

Dated:   **December 9, 2020**

UNITED STATES DISTRICT JUDGE