1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   VINCENTE BENAVIDES FIGUEROA,              No.  1:19-cv-00558-DAD-JLT

12                     Plaintiff,

13         v.                                   ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANTS'
14   KERN COUNTY, et al.,                       MOTION TO DISMISS

15                     Defendants.              (Doc. No. 24)

16

17

18          This matter is before the court on defendants' motion to dismiss seven of plaintiff's causes

19   of action asserted in his second amended complaint (Doc. No. 19) against defendants Kern

20   County, Robert Carbone, Gregg Bresson, and Ray Lopez.  (Doc. No. 24.)  A hearing on this

21   motion was held back on November 19, 2019.[1]  (Doc. No. 36.)  Attorneys Andrew Thomson,

22   Kyle Holmes, and Kevin Gilbert appeared telephonically on behalf of defendants, and attorneys

23   Barrett Litt, Ronald Kaye, James Do Kim, and Salomon Zavala appeared telephonically on behalf

24   /////

25   _____

26   [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
     overwhelming caseload has been well publicized and the long-standing lack of judicial resources
27   in this district has reached crisis proportion.  Unfortunately, that situation sometimes results in the
     court not being able to issue orders in submitted civil matters within an acceptable period of time.
28   This situation is frustrating to the court, which fully realizes how incredibly frustrating it is to the
     parties and their counsel.

                                                    1

1    of plaintiff.  For the reasons explained below, the court will grant in part and deny in part

2    defendants' motion to dismiss.

3                                        **BACKGROUND**

4           On August 8, 2019, plaintiff Vincente Benavides Figueroa filed the operative second

5    amended complaint ("SAC") in this civil action against defendants Kern County, City of Delano,

6    Robert Carbone, Gregg Bresson, Ray Lopez, Alfonso Valdez, the estate of Jeffrey Nacua, Sarah

7    Garcia Nacua, Dr. James Dibdin, and Does 1–10, asserting nine causes of action, including:  (i)

8    claims brought pursuant to 42 U.S.C. § 1983 for false evidence violations, joint action conspiracy,

9    *Brady* violations, due process violations, and *Monell* liability; (ii) claims under California

10   Government Code § 815.2 for *respondeat superior* and vicarious liability; (iii) gross negligence

11   claims; and (iv) claims under California Civil Code § 52.1.  (Doc. No. 19 ("SAC").)  The Kern

12   County District Attorney's Office and the Kern County Coroner's and Medical Examiner's Office

13   are agencies of defendant Kern County.  (*Id*. at ¶ 11.)  Defendant Kern County employed

14   defendants James Dibdin, Robert Carbone, Gregg Bresson, Ray Lopez and Does 1–5 at all

15   relevant times.  (*Id*.)

16          In his SAC, plaintiff alleges the following.[2]  On November 18, 1991, plaintiff was arrested

17   and charged with the rape and murder of Consuelo Verdugo, his girlfriend's toddler daughter.

18   (*Id.* at ¶ 4.)  Plaintiff was sentenced to death, and he remained on death row for nearly 25 years.

19   (*Id*.)  On March 12, 2018, the California Supreme Court granted plaintiff's petition for *habeas*

20   *corpus* and vacated his death penalty conviction.  (*Id.* at ¶ 3; *see also In re Figueroa*, 4 Cal. 5th

21   576 (2018).)  The California Supreme Court granted plaintiff's petition upon finding that his

22   conviction was based on false evidence.  (SAC at ¶ 3.)  Throughout the investigation and

23   prosecution of plaintiff's criminal case, there were concerted efforts by law enforcement

24   detectives, investigators, child protective services, and prosecutors to falsify evidence and

25   influence witnesses to give false testimony.  (*Id*. at ¶ 4.)

26   ───────────────────

27   [2]  The court will not provide a comprehensive or exhaustive summary of plaintiffs' SAC, which
     includes 285 lengthy paragraphs spanning 100 pages.  Rather, the court summarizes plaintiffs'
     allegations here and in the analysis section below, focusing on allegations that are relevant to the

28   court's analysis of the pending motion.

                                                2

On the evening of November 17, 1991, Estela Medina and plaintiff brought Ms. Medina's daughter, 21-month old Consuelo Verdugo ("Consuelo"), to the Delano Regional Medical Center's ("DRMC") emergency room.  (*Id*. at ¶ 23.)  Estela Medina had left Consuelo and her 9-year old sister Cristina Medina in the care of plaintiff, who was her boyfriend, when she left for work at DRMC where she was employed as a nurse's aide.  (*Id*.)  After Estela left, plaintiff gave Cristina permission to visit her friend, who lived in the same apartment complex.  Approximately fifteen minutes later, plaintiff called for Cristina to return home from her friend.  (*Id*. at ¶ 24.)  When Christina arrived back home, plaintiff was holding Consuelo and told Cristina to call her mother because something was wrong.  (*Id*.)  Cristina contacted her mother and told her that Consuelo was pale, sick, and could not breathe.  (*Id*. at ¶ 25.)  Estela arrived back at her apartment and she and plaintiff drove Consuelo to DRMC.  (*Id*.)  Over the next week, Consuelo was transferred to the Kern County Medical Center ("KMC") and then to UCLA Medical Center as her condition continued to worsen.  Consuelo died on November 25, 1991 as a result of internal injuries.  (*Id*. at ¶ 26.)

Every prosecution medical expert to testify at plaintiff's trial, except for defendant Dibdin, later recanted his or her trial testimony that Consuelo had been sexually abused.  (*Id*. at ¶ 28.) The medical records from DRMC indicate that Consuelo was initially limp and minimally responsive to external stimulation.  (*Id*. at ¶ 29.)  There is no indication in the DRMC medical records of any trauma to Consuelo's genitalia or anus.  (*Id*.)  The forensic pathologist, Dr. Dibdin, falsely identified Consuelo's cause of death in his autopsy report as "blunt force penetrating injury of the anus." (*Id*. at ¶ 34.)  Consuelo had five fractured ribs, which Dr. Dibdin believed were caused by tight squeezing during a sexual assault.  (*Id*.)  Dr. Dibdin attributed brain infarcts and brain swelling to Consuelo having been violently shaken.  (*Id*.)  Dr. Dibdin testified at plaintiff's trial that Consuelo's anal injuries were consistent with penile penetration causing acute lacerations and direct abdominal injury.  (*Id*.)

In support of his habeas petition filed in state court, plaintiff established that the introduction of false evidence at trial resulted in his convictions.  (*Id*. at ¶ 35.)  Specifically, plaintiff showed that Dr. Dibdin's theory that Consuelo's injuries were caused by anal penetration

was both false and medically impossible.  (*Id*.)  The genital and rectal injuries introduced as

evidence at plaintiff's trial were not detected during Consuelo's treatment at DRMC.  (*Id*. at ¶

41.)  Instead, the evidence established that the tearing and anal laxity noted during Dr. Dibdin's

autopsy had resulted from the performance of normal medical procedures during her treatment.

(*Id*. at ¶¶ 36–44.)  The medical experts who testified at plaintiff's criminal trial recanted their

testimony because they had not been given Consuelo's DRMC medical records or autopsy report

before testifying.  (*Id*. at ¶ 46.)  The Kern County District Attorney's Office provided no

explanation in the state habeas proceedings why the complete medical records had not been

provided to these expert witnesses.  (*Id*. at ¶ 53.)  Over the course of the criminal investigation of

plaintiff, Dr. Dibdin provided a wide array of false or misleading medical evidence regarding the

injuries Consuelo had suffered.  (*Id*. at ¶¶ 122–133.)

   Lab notes and photographs from Jeanne Spencer, a Kern County Criminalist, that

reflected dirt, debris, plant fibers, and gravel found on Consuelo's person were also not provided

to plaintiff's defense team.  (*Id*. at ¶ 156.)  This evidence was consistent with plaintiff's version of

events that he had found Consuelo outside the front door of the apartment.  (*Id*.)  Moreover,

prevailing practice in Kern County in 1991 was for law enforcement to obtain samples of fluids

from suspected sexual assault victims using a law enforcement "rape kit."  (*Id*. at ¶ 163.)

Contrary to that practice, the prosecution represented at plaintiff's trial that no such sampling was

performed in this case.  (*Id*.)

   Plaintiff alleges that, after his arrest, evidence was systematically falsified throughout his

criminal investigation.  (*Id*. at ¶ 70.)  Officer Valdez and Investigator Bresson were assisted in

that investigation by officials and employees from the Kern County District Attorney's Office.

(*Id*. at ¶ 69.)  Valdez and Bresson coerced and pressured Estela Medina into providing

incriminating evidence against plaintiff.  (*Id*. at ¶ 71.)  Specifically, Valdez and Bresson

unilaterally decided to remove Ms. Medina's daughter Cristina from her mother's custody

without consulting Child Protective Services ("CPS").  (*Id*.)  This effort continued until Ms.

Medina provided statements inculpating plaintiff.  (*Id*. at ¶ 72–82.)  The investigators, including

defendant Lopez, likewise used coercive and manipulative techniques to convince Cristina to

1   provide allegedly false testimony inculpating plaintiff.  (*Id.* at ¶ 87.)  Kern County officials

2   withheld from plaintiff's defense team Cristina's DHS/CPS and juvenile court records that

3   demonstrated the coordinated efforts of DHS/CPS workers and law enforcement involved in the

4   criminal investigation of plaintiff to keep Cristina from her mother in order to coerce the

5   testimony of both witnesses.  (*Id.* at ¶ 90.)

6        On September 10, 2019, defendants in this civil action filed a motion to dismiss plaintiff's

7   first, second, third, fourth, seventh, eighth, and ninth causes of action.  (Doc. No. 24 at 4–5.)  On

8   October 27, 2019, plaintiff filed an opposition to that motion.  (Doc. No. 27.)  On November 12,

9   2019, defendants filed their reply to plaintiff's opposition to the pending motion.  (Doc. No. 33.)

10   **LEGAL STANDARD**

11        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

12   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

13   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

14   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

15   F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the

16   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a)

17   does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state

18   a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

19   (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the

20   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

21   defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

22        In determining whether a complaint states a claim on which relief may be granted, the

23   court accepts as true the allegations in the complaint and construes the allegations in the light

24   most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

25   *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  It is inappropriate to assume that the plaintiff

26   "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways

27   that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

28   *Carpenters*, 459 U.S. 519, 526 (1983).

**ANALYSIS**

**A.      First Four Causes of Action Under 42. U.S.C. § 1983**

Plaintiff's first four causes of action each assert claims pursuant to 42 U.S.C. § 1983 against defendants Bresson, Lopez, Valdez, the estate of Jeffrey Nacua, Sarah Garcia Nacua, James Dibdin, and Robert Carbone.  (SAC at ¶ 219.)  Defendants argue that plaintiff's first four causes of action fail as to defendants Carbone, Bresson, and Lopez because of the immunity to which each of them is entitled.  (Doc. No. 24 at 4.)  In addition, defendants argue that plaintiff's second and fourth causes of action fail because plaintiff has failed to allege facts sufficient to state a cognizable claim for relief.  (*Id.*)

1.      Defendant Carbone's Assertion of Prosecutorial Immunity

Defendant Carbone was the Kern County Deputy District Attorney in plaintiff's criminal prosecution.  (Doc. No. 24 at 8.)  Plaintiff alleges that defendant Carbone harassed, pressured, coerced, and threatened witnesses throughout the investigation and plaintiff's subsequent prosecution.  (Doc. No. 27 at 10.)  Defendants contend that any and all acts taken by defendant Carbone were carried out in his prosecutorial capacity, for which he is immune.  (Doc. No. 24 at 8.)

Courts are to take a functional approach when determining whether a given action is protected by prosecutorial immunity.  *See Patterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2019).  "In applying this approach, we distinguish between acts of advocacy, which are entitled to absolute immunity, and administrative and 'police-type' investigative acts which are not."  *Id.* "Prosecutors are protected by qualified, rather than absolute, immunity when they perform activities outside their core role as courtroom advocates."  *Id.*; *see also Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997) (qualified immunity attached for attesting to facts in support of a search warrant).

In his opposition to the pending motion, plaintiff argues that administrative and police-type investigative acts are not entitled to prosecutorial immunity.  (Doc. No. 27 at 11) (citing *Patterson*, 883 F.3d at 830).  "Rather, courts inquire 'whether the prosecutor's actions are closely associated with the judicial process.'"  (Doc. No. 27 at 12) (quoting *Burns v. Reed*, 500 U.S. 478,

495 (1991)).  Plaintiff contends that the official seeking absolute immunity bears the burden of

showing that such immunity is justified for the particular function to which the acts alleged relate.

(Doc. No. 27 at 12.)  Correspondingly, plaintiff points to key allegations in his SAC, which he

contends show that defendant Carbone acted outside the scope of his prosecutorial duties and in

an investigatory capacity.  (Doc. No. 27 at 13.)  Specifically, plaintiff alleges that defendant

Carbone "conferred with experts while they were developing their opinions, encouraging them to

reach conclusions that he knew or should have known were false."  (SAC at ¶ 140.)  Plaintiff

further alleges that defendant Carbone harassed witnesses from UCLA Medical Center and

pressured them to give statements, thus engaging in conduct more often associated with law

enforcement.  (*Id*. at ¶ 176.)  Next, plaintiff asserts that DA Investigators, under defendant

Carbone's supervision, coerced false testimony from a child witness, coerced another witness by

placing her child into protective services, and falsely represented that defendant Carbone's office

had nothing to do with the removal of that child from the home.  (*Id*. at ¶¶ 71–91; 94–95.)

Finally, plaintiff alleges that defendant Carbone "withheld exculpatory medical records from

expert witnesses to elicit false conclusions that they would not have reached otherwise."  (*Id*. at

¶¶ 46, 47, 50, 52, 53, 55.)  All of this, plaintiff avers, amounts to defendant Carbone acting in an

investigatory and administrative capacity and not in his prosecutorial capacity.  (Doc. No. 27 at

15.)

    In their reply, defendants argue that defendant Carbone is protected by prosecutorial

immunity regardless of any decisions related to witnesses because that conduct occurred at a

preliminary hearing before the court—i.e., courtroom advocacy—and defendant Carbone was not

involved in the case prior to that preliminary hearing.  (Doc. No. 33 at 2.)  More specifically,

defendants assert that defendant Carbone "was not involved in the case until well after probable

cause to arrest Plaintiff had been established."  (*Id*.)  However, defendants do not cite any

authority in support of their argument that defendant Carbone's lack of involvement prior to the

preliminary hearing in plaintiff's criminal case absolves him of liability.

    The court must, of course, accept plaintiff's allegations of defendant Carbone's taking

investigative acts as true at this stage of these proceedings.  *Hishon*, 467 U.S. at 73.  Moreover,

7

1    the court is "[m]indful of the Supreme Court's warning to avoid extending absolute immunity

2    'further than its justification would warrant.'"  *Patterson v. Van Arsdel*, 883 F.3d 826, 832 (9th

3    Cir. 2018) (quoting *Burns*, 500 U.S. at 487).  The undersigned concludes that plaintiff's claims

4    against defendant Carbone survive a motion to dismiss to the extent that motion is based on the

5    assertion of prosecutorial immunity.

6            2.      Defendants Lopez and Bresson's Assertion of Statutory Immunity

7            Next, defendants contend that defendants Bresson and Lopez, who worked as District

8    Attorney Investigators during the alleged incidents, are entitled to statutory immunity under

9    California Government Codes §§ 821.6, 815.2, and 820.8.  (Doc. No. 24 at 9.)

10           In his opposition to this aspect of the pending motion, plaintiff avers that "immunity under

11   § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil

12   rights violations."  (Doc. No. 27 at 16) (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir.

13   2000)).  Thus, plaintiff argues, the California statutory immunity provisions relied upon by

14   defendants Bresson and Lopez simply do not apply to any of his § 1983 claims.  At the hearing on

15   the pending motion, defendants conceded as much.  (Doc. No. 36.)

16           Given defendants' concession and the Ninth Circuit authority cited by plaintiff, the court

17   will deny defendants' motion to dismiss plaintiff's § 1983 claims against defendants Bresson and

18   Lopez based on state law statutory immunity.

19           3.      Sufficiency of Plaintiff's Allegations of a Joint Action Conspiracy

20           Defendants also move to dismiss plaintiff's joint action conspiracy claim brought against

21   defendants Carbone, Bresson, and Lopez.  (Doc. No. 24 at 10.)

22           "To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the

23   existence of an agreement or meeting of the minds' to violate constitutional rights.'"  *Crowe v.

24   Cty. of San Diego*, 608 F.3d 406, 440 (2010) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cty.*,

25   192 F.3d 1283, 1301 (9th Cir. 1999)).  "To be liable, each participant in the conspiracy need not

26   know the exact details of the plan, but each participant must at least share the common objective

27   of the conspiracy."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th

28   Cir. 1989) (*en banc*).

To sufficiently allege a conspiracy under § 1983, the agreement or "meeting of the minds" between the defendants "need not be overt, and may be inferred on the basis of circumstantial evidence such as the action of the defendants." *Crowe*, 608 F.3d at 440; *see also Gilbrook v. City of Westminster*, 177 F.3d 838, 856–57 (9th Cir. 1999). "In fact, because direct evidence of an agreement to violate a plaintiff's rights rarely exists, 'it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of a joint action.'" *Dickerson v. Samson, et. al.*, No. 2:17-cv-01927-TLN-JDP, 2020 WL 7042831, *11 (E.D. Cal. Nov. 30, 2020) (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at 1302). Therefore, the issue of whether defendants were involved in a conspiracy is generally a factual one that must be resolved by a jury. *Id.*; *see also Pelenty v. City of Seal Beach*, 588 Fed. App'x 623 (9th Cir. 2014).[3] Of course, a complaint must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Here, defendants contend that plaintiff has not sufficiently alleged any particularized factual details "concerning any alleged meetings or communications which constituted the alleged conspiracy or conspiratorial planning." (Doc. No. 24 at 10.)

In his opposition, plaintiff first argues that he need not allege "particularized factual details" because that standard only applies to allegations that a private individual acted under color of state law, which is not what he is alleging with respect to this claim. (Doc. No. 27 at 17–18.) Second, plaintiff argues that even if he must allege particularized factual details, his SAC contains sufficient allegations of coordinated and joint actions among the named defendants to "give rise to the inference that there was an agreement to engage in a variety of conduct that violated Plaintiff's right." (Doc. No. 27 at 19.) In this regard, plaintiff has alleged that defendants "conspired and agreed" to deprive him of his rights by creating and submitting false evidence against him. (Doc. No. 19 at 75.) Specifically, plaintiff alleges that "[t]here was a coordinated effort among employees of the District Attorney's Office, the police department, and

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  CPS to remove Cristina from Ms. Medina's custody until and unless she agreed to testify. . ..”

2  (*Id*. at 32.)  The court also notes that throughout his SAC, plaintiff groups the County officials

3  together when alleging the actions they took against him.  (*See, e.g.*, *id*. at 30.)

4        In their reply, defendants argue that although plaintiff cites to alleged conduct by one or

5  more of the defendants, plaintiff does not ever mention any sort of conspiracy or agreement

6  between the parties.  (Doc. No. 33 at 5.)

7        In considering the entirety of plaintiff's SAC, the court finds that plaintiff has alleged

8  facts sufficient to raise a plausible conspiracy claim under § 1983 against the named defendants.

9  Accordingly, the court will deny defendants' motion to dismiss plaintiff's second cause of action.

10              4.    <u>Sufficiency of Plaintiff's Allegations of a Reckless Investigation</u>

11        Although the issue has not been addressed by the Ninth Circuit, other federal courts have

12  recognized a substantive due process cause of action based upon allegations of a reckless criminal

13  investigation.  *See Wilson v. Lawrence County, Mo.*, 260 F.3d 946 (8th Cir. 2001); *see also*

14  *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (affirming the denial of leave to amend in a

15  case where the plaintiff failed to allege sufficient facts to make out a substantive due process

16  cause of action for a reckless criminal investigation); see also *Doe v. Plum Borough School*

17  *District*, 2:17-cv-00032, 2017 WL 3492542 (W.D. Penn. Aug. 15, 2017); *But see Hernandez v.*

18  *Terrones*, 397 Fed. App'x. 954, 965 (5th Cir. 2010); *Souliotes v. City of Modesto*, 1:15-cv-00556-

19  LJO-SKO, 2016 WL 3549266, *10 (E.D. Cal. June 29, 2016).  In recognizing this claim, the

20  Eighth Circuit has identified the liberty interest at stake as the "interest in obtaining fair criminal

21  proceedings," and explained that state officers' actions during an investigation violated that

22  protected liberty interest if those actions shock the conscience.  *Wilson*, 260 F.3d. at 956, 956 n.8

23  (citing *Brady v. Maryland*, 373 U.S. 83, 87) (1963)).

24        Here, defendants move to dismiss plaintiff's claim for "Reckless Investigation in

25  Violation of [Plaintiff's] Due Process Right to a Fair Trial" (SAC at ¶ 235) on the basis that

26  plaintiff has failed to sufficiently allege a due process violation because "any alleged

27  shortcomings in the investigation were neither intentional nor so reckless as to shock the

28  conscience."  (*Id*. at 11.)  Defendants also contend that "there is no inherent authority invested in

10

1   the investigators that would provide discretion regarding the decision to . . . [prosecute] any

2   defendant." (*Id.*)

3        In his opposition, plaintiff argues that the "shocks the conscience" standard is the

4   incorrect standard for assessing police conduct in connection with this claim.  (Doc. No. 27 at

5   20.)  Instead, plaintiff argues that recent case law suggests "that the correct standard is objective

6   deliberate indifference or recklessness." (*Id.*) (citing *Kingsley v. Hendrickson*, 576 U.S. 389

7   (2015) and *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).  Regardless of the

8   applicable standard, plaintiff argues that he has sufficiently alleged specific instances of reckless

9   conduct on the part of defendants in his case to meet the stricter shocks the conscience standard.

10  (Doc. No. 27 at 21.)  Lastly, plaintiff contends that defendants' assertion that defendants Bresson

11  and Lopez had no inherent authority regarding the decision to prosecute him is irrelevant, and

12  notes that defendants "cite no authority holding that a DA Investigator cannot be held liable for a

13  reckless investigation." (*Id*. at 22.)

14       In their reply, defendants argue that the only authority plaintiff cites in support of his

15  argument comes from the Eighth Circuit.  (Doc. No. 33 at 6.)  Therefore, defendants conclude,

16  without citation to authority of their own, that plaintiff has not adequately alleged his claim of a

17  reckless criminal investigation in violation of his right to due process.  (*Id.*)

18       As noted, the Eighth Circuit has recognized a substantive due process cause of action for

19  reckless criminal investigation.  *See Amrine*, 522 F.3d at 833 (citing *Cty. of Sacramento v. Lewis*,

20  523 U.S. 833, 846 (1998)).  "To establish a violation of this right by a botched investigation,

21  [plaintiff] must show that [defendants] intentionally or recklessly failed to investigate, thereby

22  shocking the conscience." *Id*. at 834.  The Eighth Circuit also explained that circumstances

23  meeting the "shocks the conscience" standard with respect to such a claim include:  "(1) evidence

24  that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators

25  purposefully ignored evidence suggesting the defendant's innocence, [and] (3) evidence of

26  systematic pressure to implicate the defendant in the face of contrary evidence." *Atkins v.*

27  *Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009).  Given the absence of binding authority and the

28  /////

11

persuasiveness of the Eighth Circuit decisions on this issue, this court finds that plaintiff has adequately alleged a claim for reckless investigation in violation of his right to due process.

Notably, in *Armine*, the Eight Circuit affirmed the district court's decision to dismiss plaintiff's reckless investigation claim without leave to amend, holding that there was no possible alleged reckless investigation in that case because there were no allegations of evidence that the investigators purposely ignored evidence suggesting innocence.  522 F.3d at 833.  That is not the case here.  Unlike in *Armine*, here plaintiff has alleged the following about his investigation and prosecution:

> Defendants recklessly conducted the investigation into Consuelo Verdugo's death by, *inter alia*: (1) procuring and relying on false evidence (and unreliable evidence); (2) coercing and intimidating witnesses; (3) removing a child from her mother in order to obtain (false) incriminating testimony; (4) hiding and distorting evidence; (5) suppressing exculpatory evidence; (6) falsifying evidence; and (7) failing to disclose their witness coercion.

(Doc. No. 27 at 21) (citing SAC ¶ 237).

In light of these specific allegations, the court need not resolve the question of which standard applies because plaintiff's allegations, if established as true, would satisfy the more demanding "shocks the conscience" standard.

Accordingly, the court finds that the SAC contains sufficient allegations of a reckless criminal investigation to survive the pending motion to dismiss.  Defendants' motion to dismiss plaintiff's fourth cause of action of a reckless criminal investigation will therefore be denied.

**B.     Seventh Cause of Action Under California Code § 815.2 for Negligent Hiring, Supervision, Promotion, Retention, and Training**

In his seventh cause of action, plaintiff alleges a claim under California Government Code § 815.2 against Kern County for the negligent hiring, supervision, promotion, retention, and training of defendants Bresson, Lopez, Carbone, and Dibdin.  (Doc. No. 19 at 97.)  Under § 815.2, a "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't. Code § 815.2.  Negligent supervision claims are cognizable under

12

1    § 815.2.  *See C.A. v. William S. Hart Union High School Dist.*, 53 Cal. 4th 861, 869 (2012).  A

2    cognizable claim for negligent supervision and training under California law is stated when it is

3    adequately alleged that an employer negligently trained their employee as to the performance of

4    the employee's job duties and, as a result, the employee caused injury to the plaintiff.  *See Garcia*

5    *ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1206–07 (E.D. Cal. 2009).

6                    1.     Whether Kern County Employees' Immunity Shields Kern County

7            California Government Code § 815.2(b) states that "[e]xcept as otherwise provided by

8    statute, a public entity is not liable for an injury resulting from an act or omission of an employee

9    of the public entity where the employee is immune from liability."  Accordingly, the court must

10   address the immunity arguments of defendants Bresson, Lopez, and Carbone.  If those defendants

11   have immunity, then so too would defendant Kern County.  Defendants rely on California

12   Government Codes § 820.8 and § 821.6 in asserting that they are entitled to immunity.

13                          a.     *California Government Code § 820.8*

14           Section 820.8 states that "[e]xcept as otherwise provided by statute, a public employee is

15   not liable for an injury caused by the act or omission of another person."  Cal. Gov't. Code

16   § 820.8.  Here, however, § 820.8 does not shield defendant Kern County from liability because

17   California law *does* provide liability for negligent supervision and training.  *See, e.g.*, *Johnson v.*

18   *Baca*, No. 13-cv--4496-MMMAJW, 2014 WL 12588641, at *17 (C.D. Cal. Mar. 3, 2014)

19   (denying a motion to dismiss brought pursuant to § 820.8 because the plaintiff had alleged that

20   the sheriff was liable for negligent supervision or training, not for the acts of his subordinates);

21   *Phillips v. Cty. of Fresno*, No. 1:13-cv-538-AWI-BAM, 2013 WL 6243278, at *13 (E.D. Cal.

22   Dec. 3, 2013) (same); *Turano v. Cty. of Alameda*, No. 17-cv-06953-KAW, 2019 WL 501479, at

23   *4 (N.D. Cal. Feb. 8, 2019) (denying motion to dismiss under § 820.8 with respect to a claim of

24   negligent supervision and discipline based upon alleged failures to follow adopted policies).

25   Because plaintiff's seventh cause of action asserts a failure to supervise claim based upon Kern

26   County's alleged actions, the court finds § 820.8 immunity inapplicable here and the motion to

27   dismiss on that ground will be denied.

28   /////

                                                    13

b.     *California Government Code § 821.6*

Defendants seek dismissal of plaintiff's negligent hiring, supervision, promotion,

retention, and training claim, contending they are entitled to immunity as to that claim under

California Government Code § 821.6.  That provision has previously been found to provide broad

immunity for investigative and prosecutorial conduct.  *See Trujillo v. City of Ontario*, 428 F.

Supp. 2d 1094, 1123–25 (C.D. Cal. 2006) ("Immunity under section 821.6 has been interpreted as

providing immunity for officers conducting investigations.").  Section 821.6 states "[a] public

employee is not liable for injury caused by his instituting or prosecuting any judicial or

administrative proceeding within the scope of his employment, even if he acts maliciously and

without probable cause."  Defendants cite several cases in which courts have cast doubt on a

narrow interpretation of the immunity granted under § 821.6.

Plaintiff argues that, under controlling Ninth Circuit precedent, § 821.6 should be read

narrowly and does not call for the dismissal of this claim.  (Doc. No. 27 at 28.)  Plaintiff is

correct.  Quite simply, the Ninth Circuit has held as follows:

> In *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 117 Cal. Rptr.
> 241, 527 P.2d 865, 871 (1974), the California Supreme Court
> interpreted section 821.6 as "confining its reach to malicious
> prosecution actions." It is true that, since *Sullivan*, California Courts
> of Appeal have interpreted section 821.6 more expansively. *See, e.g.,*
> *Kayfetz v. State*, 156 Cal.App.3d 491, 497, 203 Cal. Rptr. 33 (1984)
> ("section 821.6 is not limited to suits for damages for malicious
> prosecution, although that is a principal use of the statute"); *Amylou*
> *R. v. Cty. of Riverside*, 28 Cal.App.4th 1205, 1211, 34 Cal. Rptr.2d
> 319 (1994) (explaining that "the section clearly extends to
> proceedings which were not initiated out of a malicious intent, and
> thus would not constitute malicious prosecution").  Nonetheless,
> several district courts within this circuit have read *Sullivan* to mean
> that section 821.6 applies only to malicious prosecution claims, in
> spite of the California Courts of Appeal decisions. *See, e.g., Dinius*
> *v. Perdock*, 2012 WL 1925666, at *8–*9 (N.D. Cal. May 24, 2012)
> (agreeing "with the California Supreme Court's decision in *Sullivan*
> and find[ing] that Section 821.6 only applies to claims for malicious
> prosecution" after noting that Sullivan's holding "has been
> distinguished by numerous California Court of Appeal decisions");
> *Williams v. City of Merced*, 2013 WL 498854, at *17 (E.D. Cal. Feb.
> 7, 2013) (same).
>
> The court "must determine what meaning the state's highest court
> would give the statute in question." *Goldman v. Standard Ins. Co*.,
> 341 F.3d 1023, 1026 (9th Cir. 2003).  We think the California
> Supreme Court would adhere to *Sullivan* even though California

14

1
2
3
4

Courts of Appeal have strayed from it.  Sullivan explained that section 821.6 expressly continued the existing immunity of public employees against malicious prosecution claims and noted that "no statute impose[d] liability on public entities for malicious prosecution." *Sullivan*, 117 Cal. Rptr. 241, 527 P.2d at 871.  Further, the cases the legislative history cited focused on malicious prosecution claims. *Id.*

5
6
7

Because the California Supreme Court has already spoken on this issue, we follow *Sullivan* and we reverse and hold that the district court erred in dismissing the state law claims against County Defendants because the claims against them are not malicious prosecution claims.

8

*Garmon v. County of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016).

9

Of course, this court is bound by the Ninth Circuit's decision in *Garmon*.  Because

10

plaintiff's seventh cause of action is for failure to train and supervise under § 815.2, and not for

11

malicious prosecution, defendants are not entitled to dismissal of that claim based upon § 821.6.

12

*See Valenzuela v. San Diego Police Department*, No. 19-cv-0002-BAS-BLM, 2020 WL 804923,

13

at *4 (S.D. Cal. Feb. 18, 2020); *Ogunsalu v. Office of Administrative Hearings*, No. 3:17-cv-

14

01766-GPC-AGS, 2019 WL 1470884, at *6 (S.D. Cal. Apr. 3, 2019); *Hunt v. City of Los*

15

*Angeles*, No. CV 17-8064 AG (SS), 2019 WL 4308781, at *15 (C.D. Cal., Mar. 4, 2019).

16

2.      Special Relationship Requirement

17

In moving to dismiss this claim, defendants next argue that for such a cause of action to be

18

cognizable under § 815.2, there "must be a special relationship between the alleged tortfeasor and

19

the Plaintiff."  (Doc. No. 24 at 13) (citing *William S. Hart*, 53 Cal. 4th 861).  Defendants contend

20

that there is no special relationship here between plaintiff and the prosecuting district attorney or

21

the district attorney investigators.  (Doc. No. 24 at 13.)

22

Plaintiff responds that the special relationship standard raised by defendants only applies

23

when "an entity is liable for criminal conduct by employees outside their normal duties."  (Doc.

24

No. 27 at 24.)  Therefore, according to plaintiff, the general rule for vicarious liability applies and

25

"[l]iability for negligent supervision and training occurs when the employer fails to ensure that its

26

employee properly performed . . . and the employer had knowledge that the employee . . . could

27

not be trusted to act properly."  (*Id.*) (citing *Clovis Unified Sch. Dist.*, 627 F. Supp. 2d at 1206–

28

07.)  Plaintiff also contends that even if a special relationship were required, he has adequately

15

1   alleged such a relationship here because "there exists a well-established 'special relationship

2   between jailers and prisoners that is equally applicable to officers of the law who take arrestees

3   into custody.'"  (Doc. No. 27 at 25) (quoting *Lum v. Cty. of San Joaquin*, 756 F. Supp. 2d 1243,

4   1254 (E.D. Cal. 2010)).

5          In reply, defendants again argue that plaintiff "cannot point to any case indicating that

6   district attorneys and their investigators form a special relationship with suspects they are

7   investigating and prosecuting."  (Doc. No. 33 at 7.)  Finally, defendants argue that plaintiff has

8   not alleged that Kern County had any prior knowledge of defendants Carbone, Lopez, or Bresson

9   having engaged in unreasonable activity that would have put the county on notice.[4]  (*Id.*)  The

10  undersigned finds defendants arguments to be persuasive in this regard.

11         A plaintiff must allege a special relationship in order to bring a negligent hiring claim.

12  *See Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019); *see also*

13  *Lindsay v. Fryson*, No. 2:10-cv-02842-LKK-KJN, 2012 WL 2683019, at *6 (E.D. Cal. July 6,

14  2012) (noting that *William S. Hart* "limited the viability of the type of vicarious liability claim at

15  issue . . . to situations where the supervisory or administrative personnel have a 'special

16  relationship' with the plaintiff"), *findings and recommendations adopted*, 2012 WL 3727157

17  (E.D. Cal. Aug. 27, 2012).  Here, plaintiff argues that he has satisfied this requirement because

18  his SAC alleges that the "County had significant control over [his] life and liberty and [he] was

19  particularly vulnerable and highly dependent upon the County to conduct a fair and proper

20  investigation."  (Doc. No. 27 at 25–26.)  Plaintiff also notes that several courts have recognized

21  the existence of a "special relationship" between arresting officers and arrestees.  (*Id*. at 25.)

22  However, plaintiff's argument is misplaced here.  Notably, there are no allegations in plaintiff's

23  SAC that the officers who investigated him were also responsible for the County's hiring or

24  _____

25  [4]  Defendants first raise this argument, not in their motion to dismiss, but in their reply brief.
    "Arguments raised for the first time in a reply brief are waived."  *Turtle Island Restoration*

26  *Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012); *see also United*
    *States v. Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008) (same); *Zamani v. Carnes*, 491 F.3d

27  990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time
    in a reply brief.").  Accordingly, the court will not address defendants' argument that Kern

28  County was not on notice of Carbone, Lopez, or Bresson's past unreasonable activity.

1   training practices.  *See Estate of Osuna*, 392 F. Supp. 3d at 1183.  "The question is not whether

2   the arresting officers had a special relationship with the decedent, but rather whether the

3   supervisors responsible for hiring, training, disciplining, and so forth had such a special

4   relationship."  *Id*.

5          In addition, district courts have declined to find that a special relationship has been alleged

6   under circumstances similar to those presented here.  *See Kendrick v. Cty. of San Diego*, No. 15-

7   cv-2615-GPC(AGS), 2018 WL 1316618, at *10 (S.D. Cal. Mar. 14, 2018) ("Here, Plaintiff does

8   not allege a special relationship existed between [the decedent] and Sheriff Gore.  Therefore,

9   Sheriff Gore cannot be personally liable for a claim of negligent hiring and supervision and

10  consequently, the County cannot be vicariously liable under California Government Code section

11  815.2."); *Fuentes v. City of San Diego*, No. 3:16-cv-02871-BEN-JMA, 2017 WL 2670976, at *3

12  (S.D. Cal. June 20, 2017) ("Plaintiffs generally allege that the City and/or SDPD have a duty to

13  protect people from harm and exercise care in selection, retention, training, and supervision of

14  their employees.  However, these alleged duties do not resemble the enhanced duties imposed on

15  school personnel that formed the basis for their special relationship with the minor plaintiff in

16  *William S. Hart*."); *Willis v. Cty. of Sacramento*, No. 2:13-cv-01671-MCE-EFB, 2014 WL

17  1027070, at *6 (E.D. Cal. Mar. 14, 2014) (dismissing plaintiff's claim against the county sheriff

18  for negligent hiring, supervision, and retention "because Plaintiff did not allege that a duty existed

19  between [the sheriff] and Plaintiff") (citing *William S. Hart*); *Lindsay*, 2012 WL 2683019, at *7

20  (concluding, in a case alleging that Yuba County Child Protective Services negligently

21  supervised, hired, and retained its employees, that "there are no allegations suggesting that . . .

22  supervisors undertook or otherwise had a special relationship with plaintiff").

23         Accordingly, the court will dismiss plaintiff's seventh cause of action to the extent it is

24  based upon alleged negligent hiring, retention, training, or supervision.  Nonetheless, plaintiff will

25  be granted leave to amend his SAC with regard to the existence of a special relationship if he in

26  good faith believes that he can allege facts meeting the standards reviewed above.

27  /////

28  /////

17

1

C.    **Eighth Cause of Action for Gross Negligence**

2          In his eighth cause of action, plaintiff alleges a negligence claim against defendants Kern

3    County, Lopez, Bresson, Dibdin, and Carbone.  (Doc. No. 19 at 98.)  Defendants argue in their

4    motion to dismiss that defendant Kern County is protected by sovereign immunity except where it

5    is otherwise specifically provided by statute.  (Doc. No. 24 at 13) (citing *Williams v. Horvath*, 16

6    Cal. 3d 834, 838 (1976)).  Defendants contend that because plaintiff has not cited a statute in

7    support of his negligence claim against the county, plaintiff has failed to state a cognizable

8    negligence claim against Kern County.  (Doc. No. 24 at 14.)  Defendants also argue that separate

9    statutory immunities apply to defendants Lopez, Bresson, Dibdin, and Carbone as to any

10   negligence claim asserted against them.[5]

11         Plaintiff opposes the dismissal of this claim, arguing that defendants fail to recognize that

12   "the County can be held vicariously liable for the conduct of the Individual Defendants."  (Doc.

13   No. 27 at 28) (citing Cal. Gov't. Code § 815.2(a) and *William S. Hart*, 53 Cal. 4th at 868)).

14   Plaintiff contends that as the California Supreme Court held in *William S. Hart*, "[s]ection 815.2,

15   in turn, provides the statutory basis for liability relied on here. . .."  (Doc. No. 27 at 28) (quoting

16   *William S. Hart*, 53 Cal. 4th at 868.)  Plaintiff asserts that defendants "breached their duty of care

17   to Plaintiff through the conduct of Kern County employees and agents. . .."  (Doc. No. 19 at 98.)

18   Essentially, plaintiff seeks to hold defendant Kern County vicariously liable for the conduct of

19   individual defendants under a theory of *respondeat superior*.  (*Id.*)  According to plaintiff,

20   defendants mistakenly argue that this is a *direct* negligence cause of action against Kern County,

21   for which public entities cannot be sued.  (Doc. No. 24 at 14) (citing *Munoz v. City of Union City*,

22   120 Cal. App. 4th 1077, 1112–1115 (2004).

23         In reply, defendants maintain that plaintiff has failed to allege a statutory basis conferring

24   a right to bring a gross negligence claim against Kern County.  (Doc. No. 33 at 9.)

25   _____

26   [5]  These individual defendants are not immune from gross negligence for the same reasons
     articulated above.  California Government Code § 820.8 does not apply to the individual

27   defendants because plaintiff does not allege they are liable for the acts of others and California
     Government Code §821.6 does not apply because plaintiff's claim is not one for malicious

28   prosecution.

18

1    Based upon the California Supreme Court's decision in *William S. Hart*, the undersigned

2    concludes that Kern County "may be vicariously liable under section 815.2 for the negligence of

3    [its employees]." *William S. Hart*, 53 Cal. 4th at 879.  Of course, whether plaintiff can prove that

4    Kern County was actually negligent in this respect is not a question for the court to decide at the

5    pleading stage.  *Id.*  In any event, defendants' motion to dismiss plaintiff's eighth cause of action

6    for gross negligence against Kern County will be denied.

7        **D.    Ninth Cause of Action Under the Bane Act**

8        Plaintiff's ninth cause of action against defendants Bresson, Lopez, and Dibdin seeks

9    relief under California Civil Code § 52.1, otherwise known as the Bane Act.  (Doc. No. 19 at 99.)

10   To state a Bane Act claim, plaintiff must allege that defendants intentionally interfered with his

11   civil rights via threats, intimidation, or coercion.  *Reese v. Cty. of Sacramento*, 888 F.3d 1030,

12   1044 (9th Cir. 2018).

13       In moving to dismiss this claim, defendants argue that the Bane Act was amended in 2000

14   to apply to protected and unprotected classes alike[6] and that "nothing in the subsequent case law

15   interpreting that statute, has indicated that the amended Bane act was intended to be retroactive or

16   have retroactive application."  (Doc. No. 24 at 14.)  Defendants thus suggest that because the

17   events giving rise to this action occurred prior to the 2000 amendment to the Bane Act, the

18   current version of that law does not apply here.  (*Id.*)  Defendants also contend that the "coercion

19   inherent in detention is insufficient to show a [Bane Act] violation."  (*Id.* at 16) (citing *Quezada*

20   *v. City of Los Angeles*, 222 Cal. App. 4th 993, 1008 (2014)).  Finally, defendants rehash their

21   somewhat unclear argument that they are public employees who are not liable for acts that were

22   undertaken in the exercise of their discretion.  (Doc. No. 24 at 16) (citing Cal. Gov't. Code

23   § 820.2).

24       Plaintiff counters first by arguing that the 2000 amendment to the Bane Act merely

25   *clarifies* that the Act authorizes a cause of action regardless of whether one is a member of a

26   protected class.  (Doc. No. 27 at 29) (citing *Estate of Pimentel v. City of Ceres*, No. 1:18-cv-

27   _____

28   [6] Prior to this amendment, some California courts interpreted the Bane Act as being applicable
     only to hate crimes.  *See Venegas v. Cty. of Los Angeles*, 32 Cal. 4th 820, 841–43 (2004).

1   01203-DAD-EPG, 2019 WL 2598697, *8 (E.D. Cal. June 25, 2019)).  Therefore, according to

2   plaintiff, the 2000 amendment to the Bane Act does not raise retroactivity concerns.  (Doc. No. 27

3   at 30.)  Second, plaintiff argues that a Bane Act claim does not require an allegation of coercion

4   independent from the constitutional violation alleged.  (*Id.*) (citing *Reese*, 888 F.3d at 1043).

5   Rather, plaintiff asserts, he can demonstrate specific intent merely by alleging that defendants

6   acted with reckless disregard for his constitutional rights.  (Doc. No. 27 at 30) (citing *Scalia v.*

7   *Cty. of Kern*, 1:17-cv-01097-LJO-SKO, 2019 WL 4243225, *9 (E.D. Cal. Sep. 6, 2019)).

8   Moreover, plaintiff contends that "[p]articularized allegations that 'Defendants fabricated

9   evidence' or 'conspired against Plaintiff,' which are alleged in detail in the complaint, establish

10  the requisite intent."  (Doc. No. 27 at 32) (quoting *Acevedo v. City of Farmersville*, 1:18-cv-

11  01747-LJO-SAB, 2019 WL 3003996, *14 (E.D. Cal. July 10, 2019)).  Third, plaintiff argues that

12  discretionary immunity under California Government Code § 820.2 only applies to deliberate and

13  considered policy decisions.  (*Id.*) (citing *Buckhalter v. Torres*, No. 2:17-cv-02072-KJM-AC,

14  2019 WL 3714576, *12 (E.D. Cal. Aug. 7, 2019)).  Plaintiff concludes that this court should deny

15  defendants' motion to dismiss his Bane Act claim because his SAC alleges operational,

16  objectively unreasonable acts by defendants Bresson or Lopez—not policy-making activities.

17  (Doc. No. 27 at 32.)  The court finds these arguments to be persuasive.

18       The undersigned concludes that the 2000 amendment to the Bane Act does not affect—

19  retroactive or otherwise—the Act's application.  *See Estate of Pimental*, 2019 WL 2598697, at

20  *8.  Because the amendment served merely as a clarification to the Act, the meaning and purpose

21  of the Act remained the same.  *See W. Sec. Bank v. Superior Court*, 15 Cal. 4th 232, 243 (1997).

22  The fact that the harms alleged by plaintiff occurred prior to the amendment is therefore of no

23  consequence.  The court also agrees that as to the intent of the defendant required under the Bane

24  Act, it is sufficient for a plaintiff to allege that the defendant recklessly disregarded plaintiff's

25  rights.  *See Scalia*, 2019 WL 4243225, at *9.  Here, plaintiff has sufficiently alleged that

26  defendants recklessly disregarded his rights by withholding exculpatory evidence and coercing

27  witnesses to give false testimony in connection with plaintiff's criminal prosecution.  (SAC at ¶¶

28  /////

23, 68, 71–95, 140, 175, 182–83, 186, 188, 283–84.)  Such specific allegations are sufficient to survive a motion to dismiss.

The court finally notes that the California Supreme Court has held that California Government Code § 820.2 does not provide immunity if the alleged injury to another results, "not from the employee's exercise of [discretion] to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so."  *Olvera v. Cty. of Sacramento*, 932 F. Supp. 2d 1123, 1175–76 (E.D. Cal. 2013).  Further, § 820.2 applies only to deliberate and considered policy decisions, with courts distinguishing between planning and operational functions of government.  *Buckhalter*, 2019 WL 3714576, at *12.  "Routine, discretionary decisions part of a person's normal job duties are not covered by this immunity."  *Gogue v. City of Los Angeles*, No. 09-cv-02610-DMG-Ex, 2010 WL 11549706, at *16 (C.D. Cal. June 15, 2010).  Tellingly, defendants offer no support for their immunity claims under the Bane Act.  (Doc. No. 24 at 16.)

Plaintiff's Bane Act claim is brought against defendants Bresson, Lopez, and Dibdin, not Kern County or county leadership in charge of policy decisions.  What is more, plaintiff's allegations in support of this claim stem from operational decisions and negligence in carrying out those decisions; his allegations of wrongdoing do not arise from discretionary decisions in establishing investigatory policy.  As a result, § 820.2 immunity does not require dismissal of this claim.

For all of these reasons, the court will deny defendants' motion to dismiss plaintiff's Bane Act claim.

**CONCLUSION**

Accordingly:

1.     Defendants' motion to dismiss (Doc. No. 24) is granted in part;

2.     Plaintiffs' seventh cause of action is dismissed with leave to amend to the extent that claim is predicated upon an alleged failure to adequately hire, retain, train, or supervise;

/////

3.      Defendants' motion to dismiss (Doc. No. 24) is denied in all other respects; and

4.      Within twenty-one (21) days from the date of service of this order, plaintiffs are directed to either file an amended complaint or notify the court of their intent to proceed only on those claims found to be cognizable in this order.

IT IS SO ORDERED.

Dated:   **March 3, 2021**

UNITED STATES DISTRICT JUDGE